85  369
110  ²100

## Columbia Casino Co. v. World's Columbian Exposition.

1.  SPECIFIC PERFORMANCE—*Where a Bill Will Not Lie.*—A bill for specific performance will not lie on a creditor's claim for money alleged to be due on a contract against an insolvent, whose estate has been properly brought within the jurisdiction of a court of equity.

2.  CONTRACTS—*When in Writing—Evidence of What the Contract is.*—Where parties deliberately put their contract in writing, the written instrument is the exclusive evidence of what the contract is, and in such cases intrinsic evidence is not admissible.

3.  SEAL—*Not Indispensable on Contract of Corporations.*—Affixing

370    APPELLATE COURTS OF ILLINOIS.

VOL. 85.] Columbia Casino Co. v. World's Columbian Exposition.

the corporate seal to an agreement is not necessary to bind a corporation.

4. PRESUMPTIONS—*In Support of Decrees.*—Where the court in its decree not only confirms the master's report but finds specifically other facts in addition to the testimony of the witnesses produced by plaintiff in error before the master, it will be presumed that the evidence, if any is omitted from the transcript of the record, justified the decree.

**Creditor's Bill.**—Error to the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed November 2, 1899.

**Statement.**—On a creditor's bill filed by Benjamin D. Anguish and others against plaintiff in error, July 8, 1893, two receivers were appointed. September 11, 1893, defendant in error filed in said suit its intervening petition, setting up a written contract between it and plaintiff in error, of date August 12, 1892, by which defendant in error granted to plaintiff in error the entire Casino building, with the exception of the ground floor, situated on the grounds of defendant in error, in the city of Chicago, to hold the same from April 1, 1893, until forty-four days after the close of the World's Columbian Exposition, and also the right to conduct in said building a restaurant where meals, lunches, refreshments and drinks, including tea, coffee and cigars, beer, mineral water, and all kinds of wines and cordials, might be obtained. Plaintiff in error, agreed, among other things, that it would pay to defendant in error five-sixths of the actual cost of the construction of said building, $20,000 of said cost to be paid on signing the contract, and the remainder to be paid on demand as the construction progressed; also that it would faithfully account for and pay to defendant in error twenty-five per cent of its gross receipts, settlements to be had and payments to be made each day for the previous day's business, at such time as should be designated by defendant in error; that the method of arriving at such gross receipts should be such as would be approved by defendant in error, and that said Casino Company would keep true and full accounts of its receipts, which should be open to the inspection of the defendant in error

at any time during business hours. Defendant in error agreed that it would conduct its water sewerage, steam, gas and electric light system to said building, and would allow the use of said systems and of the cold-storage system on the same basis as given to others holding similar rights.

The petition of defendant in error alleges the appointment of receivers July 8, 1893, and that they had entered into possession of the property and were conducting the business of the Casino Company; that, although frequently requested so to do, they had refused to pay to petitioner any portion of the receipts of the business, and that there is due and owing to petitioner on account of twenty-five per cent of the business done by the receivers up to and including September 7, 1893, $2,711.16; that the receivers, since assuming control of the business, have been using petitioner's electric light system and paying nothing therefor, and that they are indebted therefor up to and including September 1, 1893, in the sum of about $2,005.25. It is further alleged in the petition that July 1, 1893, there was an adjustment between petitioner and plaintiff in error of all matters of difference between them, except construction matters, and it was agreed between them that plaintiff in error owed to petitioner, up to and including June 20, 1893, after allowance of all claims of plaintiff in error, except on account of construction matters, the sum of $8,343.75, on account of petitioner's twenty-five per cent of the gross receipts of said business, and upon said settlement being made, the following agreement was executed by the parties:

"This agreement between the World's Columbian Exposition and the Columbia Casino Company, witnesseth: That all matters and differences (excepting claim of both parties on account of construction matters) between the said parties have this day been settled, compromised and adjusted as follows, to wit: After allowing to said Columbia Casino Company all claims and demands of every kind and nature, it owed to the said Columbian Exposition Company on and including June 20, 1893, the sum of $8,343.75, which said Columbia Casino Company agrees to pay, as follows: $543.75 cash in hand, for which a check is given of even date with this agreement; $2,000 of the remainder to be paid October

372    APPELLATE COURTS OF ILLINOIS.

Vol. 85.] Columbia Casino Co. v. World's Columbian Exposition.

15, 1895, without interest. On July 15th said Columbia
Casino Company shall pay to said Exposition, twenty-five
per cent in addition to the daily audits of its gross receipts
for July 4, 1893, from all sources. On Saturday, July 8th,
said Columbia Casino Company shall pay to said Exposition
$1,000. As to the remainder of said indebtedness, said
Columbia Casino Company shall, in addition to and
exclusive of its daily audits, pay the same at the rate of
$100 per day, beginning July 10, 1893, and continue on each
succeeding day thereafter until the whole sum shall be paid,
excepting the $2,000 hereinbefore mentioned to be paid
October 15, 1893.

July 1, 1893.

> COLUMBIA CASINO COMPANY,
>   By H. D. Kochersperger, President.
> ADOLPH NATHAN,
>   Chairman Committee on Adjustment,
>     World's Columbian Exposition."

That in consideration of the premises plaintiff in error
executed its receipt to petitioner for $2,621.25 in full pay-
ment of all claims and demands, with the single exception
of a claim made by it on account of construction, which
claim was not admitted by petitioner; that said sum of
$543.75, agreed to be paid was not paid, nor has any pay-
ment been made by plaintiff in error since the making of
said agreement; that up to the time of the appointment of
the receivers and their assumption of said business, there
was due petitioner under said settlement $8,243.75, and in
addition thereto, for amounts accruing subsequently to
June 20th, and up to and including July 6, 1893, a further
sum on account of said 25 per cent of receipts, of $2,765.69;
and in a further sum of $1,360 for electric light service
from June 20th to and including July 5th; making in all
$12,569.44. The petition then alleges that the receivers
have on hand a large sum of money, and are doing a
large and profitable business, and prays for an order direct-
ing them to pay petitioner the amounts due them, and also
that they pay petitioner, day by day, 25 per cent of the
gross receipts of the business, as per the contract, and for
electric light service, etc.

November 7, 1894, the following occurred:

" On motion of solicitor it is ordered that leave be and is hereby granted the defendant, Columbia Casino Company, to file objections to the intervening petition of the World's Columbian Exposition within five days from this date, conditional, by agreement of parties in open court, that the testimony taken on former reference, upon objecting creditors to claims of World's Columbian Exposition to be read by either party, with leave to parties to take additional testimony."

November 12, 1894, plaintiff in error filed objections, and they were referred to the master to take proof and report, with his opinion as to the law and evidence. Evidence was taken before the master, who reported, recommending that the objections of plaintiff in error be not sustained, and finding that there was due from the receivers to defendant in error the sum of $34,799.74. Objections filed before the master were ordered to stand as exceptions, and the court, November 23, 1896, overruled the exceptions, affirmed the master's report, and decreed that the receivers should pay to defendant in error the sum of $25,000 to apply on the amount found due by the master, the remainder of said amount to abide the further order of the court. To reverse the decree so rendered this writ of error was sued out. Contained in the printed argument of counsel for defendant in error are what purport to be certified copies of two orders, one of date October 4, 1893, and the other of date February 10, 1897. Neither of these orders appears in the transcript filed by plaintiff in error, and no additional or supplemental transcript has been filed by either party. No such orders, therefore, are before us for consideration. The objections filed by plaintiff in error are very lengthy. The main objections are as follows:

" That in order to induce this objector to enter into said written contract and to provide for and bear the very large percentage of the cost of said Casino building, which in said contract was stipulated to be paid by this objector, the said Exposition, through its directors and officers, acting in that behalf, at all times stated and represented to this ob-

374    APPELLATE COURTS OF ILLINOIS.

VOL. 85.] Columbia Casino Co. v. World's Columbian Exposition.

jector, and its officers and promoters, both before the execution of said writing, in the negotiations that were then held, and after said writing was made, but before the expenditures called for thereunder were made by this objector, that there would be secured to this objector, upon condition, and as a result of its executing said writing, a substantial monopoly of the furnishing in said Exposition grounds of hot meals; and in this connection the World's Columbian Exposition and its agents and officers, as an inducement to this objector to execute said writing and to make the payments that were to be made by this objector thereunder, represented and promised to this objector, and its promoters and officers, that there would not and should not be granted any other concession by said World's Columbian Exposition under which a kitchen could be erected on said grounds and cooking be done and hot meals prepared and served anywhere within said Exposition grounds, exclusive of the Midway Plaisance, except a permit to the Clam Bake, and that would be only for a fish dinner, and for the further exception of the Administration Building, where meals would be furnished to the officers of the World's Columbian Exposition only, and their guests;" and that, relying on said representations and promises, objector made large expenditures, etc. That after said contract was executed, and after moneys had been paid by objector to defendant in error, the latter granted numerous concessions, amounting to more than twenty, to divers persons, corporations and associations, for the preparation and serving of hot meals in competition with objector, whereby large profits were lost to objector. The objector admits the execution of the agreement of July 1, 1893, set forth in the intervening petition, but alleges that Kochersperger, president of plaintiff in error, was ignorant of the negotiations prior to the execution of the contract of August 12, 1893, and that the making of the settlement of July 1, 1893, was not within his power.

Damages are claimed, alleged to have been sustained by reason of the failure of defendant in error to comply with its said promises, etc., and by reason of other alleged de-

faults of defendant in error. Objector, apparently treating its objections as an answer, concludes its objections with a prayer that the contract of August 12th be amended, if deemed necessary; that the claim of defendant in error be denied, for an accounting, and that defendant in error may be decreed to pay the balance which may be found due to the objector, etc.

WILLIAM P. BLACK, attorney for plaintiff in error.

WALKER & PAYNE, attorneys for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Counsel for plaintiff in error assumes in his argument that the intervening petition of defendant in error is in substance a bill for specific performance, and much of his argument is based on this assumption. The intervening petition is merely a creditor's claim against an insolvent whose estate has been properly brought within the jurisdiction of a court of equity, and is solely for money alleged to be due on a contract. In such case a bill for specific performance will not lie. Pierce et al. v. Plumb, 74 Ill. 326; Barton v. DeWolf, 108 Ib. 195.

The claim of defendant in error, although filed in a suit in equity, is a legal claim, and not merely one of which only a court of equity could entertain jurisdiction. The master finds:

" It is contended by the Columbia Casino Company that, pending the negotiations for the concessions prior to the date of said contract, August 12, 1892, the World's Columbian Exposition, through its representatives, promised the Casino Company that it should have a concession for the exclusive right to furnish hot meals and liquors during the continuance of the Exposition, to all visitors to the grounds, and that such monopoly constituted the real consideration for the contract of August 12, 1892, on the part of the objector; that a clause should be inserted in said ' Exhibit A' to that effect; that the omission of such clause was a fraud on this objector.

" I find from the evidence such promises were made prior

376     APPELLATE COURTS OF ILLINOIS.

VOL. 85.] Columbia Casino Co. v. World's Columbian Exposition.

to the execution of said contract, and that upon the draft of the contract, without such restrictive clause having been submitted to the Casino Company prior to its execution, said Casino Company applied to the Exposition to have such clause inserted in said contract, and was met with a refusal on the part of such Exposition to allow such restriction; that after such refusal by said Exposition said contract was executed by said Casino Company; that said contract expressed the final agreement between the World's Columbian Exposition and the Columbia Casino Company, that all prior talks and negotiations were settled by and merged in said written contract. .

"I find that from the evidence no damages are proved for excessive charges on the part of the World's Columbian Exposition for the construction of the Casino building; that all other matters were adjusted and settled."

The findings of fact are fully sustained by the evidence.

Ernst Saddler, who was president of the Casino Company, before and at the time the contract was signed, testifying in regard to the alleged representations of defendant in error that plaintiff in error would have an exclusive right or monopoly, says: "These representations were made before we made the first payment." Kirton, attorney for plaintiff in error, of whom Mr. Saddler testified, "The negotiations were left principally in his hands," testified: "The signing of the contract and the payment of the $20,000 were contemporaneous." The $20,000 was the first payment.

Kirton's evidence also shows that all talk of exclusive right in plaintiff in error occurred prior to the execution of the contract, and also that when the contract was submitted to plaintiff in error no objection was made that it omitted to provide for such exclusive right. Kirton testified that two or three weeks before the first payment was made it was "submitted to us" unsigned; that he would not say that during that time all the officers of plaintiff in error considered it, but that some of them did; that he, Kirton, during that time had the contract at his office; that he was dissatisfied with it, and expressed his dissatisfaction to Mr. Carlisle, the attorney for the Exposition Company, but the company refused to alter it. Subsequently, on being re-

called, he testified that in his interviews with Mr. Carlisle the question of an agreement that plaintiff in error was to have an exclusive right was not discussed.

The following occurred in the examination of Mr. Saddler:

Q. "Did you personally examine the concession in writing executed by the Exposition Company at the time of the payment of the $20,000 ?"   A.   "I read the contract, but Mr. Kirton was appointed a committee to attend to those things, and of course I left the whole thing to him, he being the attorney for the company."

The president of plaintiff in error read the contract before signing it, the payment of the $20,000, which was the first payment, and the signing, being contemporaneous. Kirton, the attorney for plaintiff in error and the committee having charge of the matter, had it in his possession for weeks before it was signed, and evidently read it, because he says he expressed dissatisfaction with it, and he knew that defendant in error refused to alter it.   Under these circumstances, which completely exclude the idea of mutual mistake, or of fraud on the defendant in error, the contract was executed by plaintiff in error.   That it can not now be varied by oral testimony materially affecting its terms, is a proposition too thoroughly settled to admit of serious discussion.

" Where parties have deliberately put their contract into writing, the rule doubtless is, that the written instrument is the exclusive evidence of what the contract is."   Memory v. Niepert, 131 Ill. 628, 630.   And in such case extrinsic evidence is inadmissible.   Weaver v. Fries, 85 Ill.   356; Wabash Ry. Co. v. McKittrick, 36 Ill. App. 83.

We agree with the master's finding, that no damages were proved on account of construction, which was the only matter omitted from the settlement of July 1, 1893.   There was no proof of the allegation in the objections of plaintiff in error that Mr. Kochersperger, its president, was not aware of the negotiations antecedent to the execution of the con_ tract, and the allegation that he was powerless to make the settlement, we do not think sustained.   President Kochers-

378    APPELLATE COURTS OF ILLINOIS.

VOL. 85.] Columbia Casino Co. v. World's Columbian Exposition.

perger testified: "I know at the meeting, I think both of the directors and ·stockholders, there was a committee appointed, of whom I was one, to adjust the matters in regard to the concession of percentage between the Casino Company and the World's Fair people." He further testified: "The matter that they intended to adjust was the matter of the twenty-five per cent," etc.

Now, the power to adjust the percentage necessarily included the power to adjust and determine the amount, if anything, which the Casino Company should pay to the Exposition Company, and in determining that, if it appeared that the former company had any just claim against the latter, such claim was a proper matter for consideration and settlement, because, on the amount of such claim being ascertained, it was proper to deduct it from the total amount of the percentage found due to the Exposition Company. It appears from the agreement of settlement that this was done as to all claims of plaintiff in error for damages, except its claim on account of construction matters, in respect to which no evidence was produced before the master. The agreement of July 1, 1893, being signed in the name of plaintiff in error, and by the proper officers, the authority to execute it will be presumed in the absence of evidence to the contrary. Cook on Stock and Stockholders, etc., Sec. 723.

The affixing the corporate seal to the agreement was not necessary to bind the corporation. Ib., Sec. 721. All damage in respect to which evidence was given, occurred prior to June 20, 1893, and must therefore be presumed to have been included in the settlement of July 1, 1893.

As has been stated, a condition of the permission granted to plaintiff in error to file objections was, that the testimony taken on a former reference upon objecting creditors to claims of World's Columbian Exposition might be read by either party. This condition was agreed to by the parties in open court. The only evidence in the record is the testimony produced before the master by plaintiff in error in support of its objections. The master says in his report:

"I have taken the depositions of sundry witnesses, together with sundry files and documents, and from the evidence submitted I find," etc. The decree recites, "And thereupon said cause coming on for final hearing upon the petition of the intervention of the World's Columbian Exposition and the answer thereto, and upon the reports of Jeremiah Leaming, one of the masters of this court, filed herein on the 6th day of July, 1894, and on July 3, 1893, respectively, and upon the testimony, proofs and exhibits taken by the respective parties before said master, and returned by him with and as a part of his report," etc.

It is manifest from the foregoing that evidence was submitted to and considered by the master and also by the court, in addition to the testimony of the witnesses produced by plaintiff in error before the master. The court, in its decree, not only confirmed the master's report, thus finding, as we think, the facts as did the master, but found specifically that the sum of $25,000 was due from the Columbia Casino Company to the World's Columbian Exposition. In such case it must be presumed that the evidence omitted from the transcript of the record justified the decree. Allen v. LeMoyne, 102 Ill. 25. The decree will be affirmed.