92        APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Fidelity Fire Ins. Co. v. Illinois Trust & Savings Bk.

## Fidelity Fire Insurance Company v. Illinois Trust and Savings Bank et al.

1. INTERPLEADER—*When a Bill of Interpleader Will Lie.*—A bank held a fund arising from the business of an insurance company as conducted by its agents and in which the bank claimed no interest, but was a mere stockholder. Both the insurance company and the agents claimed to own the fund, the company demanding payment of the amount by the bank to it, and the agents threatening to hold the bank liable to them in case of such payment. *Held*, that the bank was entitled to maintain a bill of interpleader against the two parties, and it is not controlling that the claim of the agents was for damages for an alleged breach of contract.

2. CONTRACTS—*Where a Contract in Writing Can Not Be Modified by Parol.*—Where the parties have deliberately put their contract in writing, and the language is so plain that there is no room for construction, such contract can not be modified by parol evidence.

**Bill of Interpleader.**—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded with directions. Opinion filed October 15, 1903.

THOMAS TAYLOR, JR., attorney for appellant; GEORGE WHITELOCK and JAMES W. TAYLOR, of counsel.

" Where the parties have deliberately reduced their contract into writing, such writing is doubtless the exclusive evidence of what the contract is." Columbia C. Co. v. World's Col. Ex., 85 Ill. App. 369; Memory v. Niepert, 131 Ill. 623; Van Kirk v. Scott, 54 Ill. App. 681; Strehl v. D'Evers, 66 Ill. 79; Hill v. Hatfield, 72 Ill. App. 534.

" The test of the completeness of the writing proposed as a contract is the writing itself. If this bears evidence of careful preparation, of a deliberate regard for the many questions which would naturally arise out of the subject-matter of the contract, and if it is reasonable to conclude from it that the parties have therein expressed their final intentions in regard to the matters within the scope of the writing, then it will be deemed a complete and unalterable exposition of such intentions." Jones on Construction of Commercial Contract, Sec. 134; Browne on Parol Evidence, 5th Ed., page 162.

JAMES C. HUTCHINS and MAX BAIRD, attorneys for appellee Illinois Trust and Savings Bank.

After a bank is notified that the apparent owner of a deposit is not the real owner, then it pays the account to one or the other at its peril, and its only safe course in such case is to file a bill of interpleader, bringing both the claimants into court to settle their rights to the fund. Farmers Bank v. King, 57 Pa. St. 202; Zane on Banks and Banking, par. 134, and cases cited.

D. J. SCHUYLER and THOMAS BATES, attorneys for appellees Lewis H. Davis, John Shepherd and John E. Shepherd.

MR. JUSTICE WINDES delivered the opinion of the court.

The appellee bank filed a bill of interpleader against the appellant insurance company, and the appellees Davis and the Shepherds, doing business under the name of Davis & Shepherd, offering to bring into court the amount of a deposit in the bank of $12,016.79, in the name of the insurance company, subject to the check of the company, signed by Davis & Shepherd, managers, which moneys, it is alleged, were claimed both by the insurance company and Davis & Shepherd. After answers by the defendants and issues made, the cause was referred to a master to take evidence and report his conclusions. The master in effect reported in favor of Davis & Shepherd, and his report, after objections and exceptions thereto had been overruled, was affirmed by the chancellor, and a decree entered dismissing the bank from the suit, reimbursing it for costs and solicitor's fees, and releasing it from all claims of defendants; also directing the bank to pay to Davis & Shepherd out of the said fund $10,610, and their costs, and the balance to the insurance company. By the appeal a reversal of this decree is sought.

The first question presented is whether the Superior Court had jurisdiction. In substance the bill alleges that the bank held the fund in question, which arose from the business of the insurance company as conducted by Davis & Shepherd, its agents, and in which it claimed no interest —was a mere stakeholder, and that both the insurance company and Davis & Shepherd claimed to own the fund, the

94    APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Fidelity Fire Ins. Co. v. Illinois Trust & Savings Bk.

company demanding payment of the amount by the bank to it, and Davis & Shepherd threatening to hold the bank liable to them in case of such payment. The answers in effect admit these allegations, and the evidence sustains them. We are of opinion that a clear case for a bill of interpleader is presented by these facts, and that the court had jurisdiction. It is not controlling that the claim of Davis & Shepherd was for damages for an alleged breach of contract. Newhall v. Kastens, 70 Ill. 156–9, and citations; Platte, etc., Bank v. Nat. Bk., 155 Ill. 250–7, and citations; Brocklebank v. Lasher, 109 Ill. App. 627, and citations.

The next question, and one which, in our opinion, controls this appeal, is whether, under the contract relations between the insurance company and Davis & Shepherd appearing in the record, a five-year agreement of agency by the latter for the company is established.

In the spring of the year 1900 Davis & Shepherd made an agreement with the insurance company, by which they became its agents and managers at Chicago for its western business in Illinois and eight other western states. This agency continued until December, 1900, when the insurance company ceased doing business and closed up the agency, the fund in question arising from the company's business conducted by Davis & Shepherd being then on deposit with the appellee bank. The negotiations leading to the agreement of agency were begun in March, 1900, were carried on between one J. J. Courtney representing the company, who later became its president, and the members of the firm of Davis & Shepherd, and continued to the following June 16th, when they were completed, though the commencement of the agency was to be dated back as of May 1, 1900, about which time it appears that Davis & Shepherd began their work for the company. The first negotiations were conversations between said Courtney and the members of the firm of Davis & Shepherd had in Chicago about the 22d day of March, 1900, which was followed by a letter of March 24th, written by Davis & Shepherd to Courtney, which Davis testifies was written at the request of Court-

Fidelity Fire Ins. Co. v. Illinois Trust & Savings Bk.

ney for the purpose of setting forth their previous conversations and agreements as he, Davis, understood them, upon the receipt of which, he says, Courtney promised to forward the appointment of Davis & Shepherd as the company's agents. This letter is very long, relates to certain matters concerning the Chicago branch of the company's business, and in so far as is material is as follows:

"CHICAGO, March 24, 1900.
MR. J. J. COURTNEY, Pres't, Brooklyn, N. Y.

DEAR SIR: Referring to our conversation of yesterday * * *

Tenth. It must be the understanding that the contemplated arrangement is a permanent one, extending over a period of years, not less than five nor more than ten is asked in such a contract, for which employment the said named gentlemen will give their very best endeavor and their time in the development of said department.

Eleventh. A percentage of five per cent will be expected on the balance betwixt income and outgo in said department to be paid Messrs. Davis & Shepherd.

Thirteenth. Only upon the condition of establishing a permanent insurance business on a solid basis, and under conservative management, are these gentlemen willing to engage to open up and develop such department, and a contract will be entered into by them with this understanding only.

Fourteenth. * * *

At a very conservative estimate and on $2,500 lines, such as you suggest, an income in this territory of $150,000 for the first year may be expected; $200,000 second year; $250,000 the third year, and $300,000 within five years. This means that the most conservative methods are to be used in the selecting of business, and in the management of the department, and only the best business, through good agencies, selected."

April 15, 1900, Davis & Shepherd sent a telegram to Courtney at the company's office in Baltimore, in which it is stated that Mr. John Shepherd of their firm would be with him, Courtney, Friday, (evidently referring to a later date,) and saying, "he has our authority to close contemplated arrangements." The evidence shows that Mr. John Shepherd did go to Baltimore, where the matter of the

96. APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Fidelity Fire Ins. Co. v. Illinois Trust & Savings Bk.

agency was discussed with Mr. Courtney, and the testimony shows that, among other things, the duration of the agency was discussed, and that Shepherd stated that he " would not enter into any arrangement that did not contemplate some length of time." During the month of May following, letters were written by Courtney to Davis & Shepherd which refer in a general way to the agency and their letter of appointment, which was to be sent to them, and on May 7th Courtney sent a letter of that date to Davis & Shepherd in Chicago, in which was enclosed a draft of a letter of appointment of Davis & Shepherd as western branch managers of the company. The first of these letters states in substance that the appointment had been wired to Davis & Shepherd; that this letter was in confirmation of the telegram; that the letter of appointment had been prepared." with utmost care," though it was not signed, and that Davis & Shepherd, after having carefully read it, should make " whatever suggestions may occur to you for its modification or alteration in any particular," and return it to the office of the company for submission to its executive committee on the sixteenth of the month (May). This draft of letter of appointment is lengthy, and after the address, so far as material, is as follows:

" GENTLEMEN :

WESTERN DEPARTMENT.

Referring to my visit to your city in March last, and to your favor of the 24th of March, as well as to the visit of your Mr. John Shepherd in April to this city, for the purpose of perfecting arrangements for the establishment of a branch of this company, to be hereinafter styled as its ' Western Department,' with headquarters in your city, at Nos. 195–197 LaSalle street, we now take pleasure in advising you of your appointment as manager thereof, said appointment to date as and from the first of May, 1900. * * *

Second. * * *

" In a general way we desire our line kept down to a conservative basis for the reason that a company of the limited size and comparative youth of the ' Fidelity ' may prove of more benefit to its agents by writing conserva-

tively for the first two or three years of its existence, and later on increasing its lines, than by writing excessive lines at the start and be compelled to reduce them later. The 'Fidelity' is in business to stay, and under your able representations should soon take a leading place in the agency field of the West." *  *  *

### DURATION OF YOUR APPOINTMENT.

It is mutually recognized that this appointment has for its object not only the efficient supervision and proper conduct of all the company's business in the territory placed under your jurisdiction, but the active cultivation and material increase in the volume of its business in that area, particularly in the preferred classes, which will not involve the undue writing of term business as alluded to heretofore. Our aim, which we understand to be shared by your good selves, is to establish a permanent insurance business in the territory assigned to you on a solid basis, and under conservative management, such as has been mutually discussed and agreed upon, and this contract is entered into between this company and your good selves with this understanding only."  *  *  *

The omitted parts of this letter refer to the territory covered by the agency, various details as to the conduct of the business, their office, its furnishings, books of account, bank account, and an estimate of the probable income of the business for its first, second and fifth years, and other matters which cover nineteen pages of typewritten matter in the record, and concludes as follows :

" In conclusion we desire to express the hope that our relations will prove mutually beneficial and of long duration and of the most harmonious nature.

Awaiting the favor of your acknowledgment, touching upon all the features dealt with in this letter, I am, dear sirs,                                        Yours very truly,

President."

· Under date of May 12th Davis & Shepherd reply to Courtney's letter of May 7th, and state, among other things, that " we are enclosing you a copy of the draft of letter of appointment with some few modifications," and then proceed to refer to nine different headings of the draft

98     APPELLATE COURTS OF ILLINOIS.

VOL. 110.] Fidelity Fire Ins. Co. v. Illinois Trust & Savings Bk.

of the letter of appointment, but make no reference whatever to the duration of the agency. The letter closes with the following language: "Trusting that the several matters may meet with your approval we beg to remain," etc. Enclosed with this letter Davis & Shepherd returned the draft of letter of appointment with various marks and interlineations thereon, but leave that part thereof headed "Duration of Your Appointment," which has been above quoted, without any mark or modification.

Under date of June 14, 1900, Courtney wrote to Davis & Shepherd as follows:

"DEAR SIRS: Referring to our respects of the 7th of May wherein we forwarded you a draft letter of appointment for your approval, and to your reply thereto of the 12th *idem*, containing your comments thereon, we now beg to advise you that we have rewritten the said letter of appointment under the same date, viz., May 7, 1900, and incorporated therein such modifications as have proven necessary to accord with your suggestions. This we now enclose herein, and in order that the modifications referred to and other matters needing comment may be clearly understood we recapitulate them under their several captions as follows:"

This letter then makes reference to all the suggestions of Davis & Shepherd contained in their letter of the 12th, and what had been done with reference thereto in the final letter of appointment, and closes with the request that Davis & Shepherd reply thereto in the "fullest detail without loss of time, and thus dispose once and for all of your appointment and its attendant conditions." The final letter of appointment was enclosed in this letter, and is the same as the original draft under the heading "Duration of Your Appointment," but in other respects is modified as above stated.

To this letter Davis & Shepherd replied, acknowledging the receipt of the "letter of appointment," and also his letter setting forth certain subjects concerning it on which Courtney desired information. The letter than proceeds to give the information referred to and concludes as follows:

" Trusting that all the matters dealt with by you have been properly disposed of to your entire satisfaction, we are yours most truly, Davis & Shepherd, Managers."

This letter contains no reference whatever to the duration of appointment, and so far as the record shows, nothing further occurred between the parties thereafter with reference to that subject, and nothing appears from the record but this correspondence and the previous conversations between the parties relating to the term of the agency.

Counsel for appellant and the appellees Davis & Shepherd agree that the contract between the parties is embodied in the "letter of appointment" as finally sent by Courtney in his letter of June 14th, the material parts of which are above quoted. The claim of appellant's counsel is that by this contract the term of the agency is left indefinite, that the language relating thereto is not ambiguous, and the contract was subject to termination at any time at the will of either of the parties. Counsel for Davis & Shepherd claim that it is apparent, from the whole instrument, that the term of the agency was for five years, and that it is to be construed with reference to the letter of Davis & Shepherd to Courtney dated March 24, 1900, and the conversations between the parties, to both of which reference has been made.

From a careful reading of the letter of appointment in the light of the correspondence between the parties referred to, we are of opinion that it formed the contract between the parties, that its language is not ambiguous as to the term of the agency, which is thereby left indefinite. No doubt the parties thereto had in contemplation the possibility, if not the probability, that the agency would be extended over a period of years. The contract was entered into after the most careful consideration of all its terms, and they were submitted to writing. The writing leaves the term of the agency indefinite, but the language is so plain that there is no room for construction, and it can not be modified by parol evidence nor by the letter of

March 24, 1900. Neither the conversations referred to nor the letter of March 24th are made a part of the contract. They are merely referred to by way of introduction to the letter of appointment. The clause in the letter of appointment, viz., " such as has been mutually discussed and agreed upon," evidently refers to the insurance business, its basis and management, and not to the term of the agency. The letter of March 24th says the appointment must be " a permanent one." It says not less than five nor more than ten years "is asked in such a contract." When, however, the letter of appointment is subsequently sent to them by Courtney, leaving this matter wholly indefinite, and asking them to read it carefully and make suggestions "for its. modification or alteration in any particular," Davis & Shepherd return it with numerous modifications and suggestions, but say nothing about the terms of the agency. Again, when the final letter of appointment is rewritten, embodying their suggestions, signed and forwarded to them, and they are requested to dispose of, once and for all, their appointment and its attendant conditions, they promptly acknowledge its receipt and express no dissent as to any of its conditions. We are of opinion the letter of appointment became the contract of the parties and fully expresses their intention as to its term. Strehl v. D'Evers, 66 Ill. 79; Orr v. Ward, 73 Ill. 318; Memory v. Niepert, 131 Ill. 623-30, and cases cited; Col. C. Co. v. World's Col. Ex., 85 Ill. App. 369, and cases cited; Graham v. Sadlier, 165 Ill. 98.

In the Orr case, *supra*, the contract sued on did not contain an undertaking of the employers to retain and continue the employe in service for a definite period, but did provide for the payment of $2,100 to the employe for the year 1873, and $2,400 for the year 1874, to be paid in semi-monthly or monthly installments, and the employe agreed to devote his whole time and attention to the interests of the employers. It was held that the term of employment was indefinite and there could be no recovery after discharge of the employe. The court say:

" We are to judge of the contract by what it contains.

Having reduced it to writing, we must presume the parties have embodied in it their entire agreement. It contains no stipulation the firm will retain appellee. for two years, or any other fixed period. Their undertaking is to pay him at a certain rate of compensation, if he shall discharge the duties assumed by him to be performed. No doubt it is true each party contracted on the supposition the business would continue through the space of two years, but appellant's firm did not obligate themselves to continue it for that length of time. As a matter of fact it terminated much sooner. We have no authority to add to the contract as the parties have made it, enlarging the liability of either one of them, and have no disposition to do so."

To like effect in principle are the other cases cited. In the Memory case the court say :

" Where parties have deliberately put their contract in writing, the rule doubtless is that the written instrument is the exclusive evidence of what the contract is."

In the Graham case the court, in speaking of letters relating to the contract written previously, say :

" When parties, after whatever previous preparation, reduce their agreement to writing, such written agreement is the final consummation of their negotiation, and the exact expression of their purpose."

In answer to the foregoing authorities, counsel for appellees say that they are not applicable for the reason that the agreement of the parties is not " fully set forth within its four corners;" that the heading, " Duration of Your Appointment," fails to express all that was intended and agreed upon by the parties in relation to the term of the appointment, and that the parol evidence was admissible for the purpose of explaining the intention of the parties as to the term of the agency. Numerous authorities are cited in support of the contention, but in our opinion they are not applicable, for the reason that the language of the contract under the heading referred to, and hereinbefore quoted, is plain, without ambiguity, and expresses the intention of the parties quite clearly, viz., that the duration of the appointment was to be indefinite, though in contemplation of the parties it would possibly and might probably extend over a period of years.

In view of our conclusion, it seems unnecessary to discuss various other questions argued by counsel. The decree of the Superior Court is reversed and the cause remanded, and that court is directed to enter a decree that the appellee bank, after deducting its costs in this and the Superior Court, and its solicitor's fees in the latter court, as found by the decree, pay the balance of the deposit in its hands to the appellant insurance company, and that the appellees Davis and the Shepherds pay all other costs in this and the Superior Court.