## Thomas B. Brougham, Administrator, v. Edgar T. Paul.

## Gen. No. 13,597.

1. CONTRACTS—*when recovery upon implied contract cannot be had.*  No recovery can be predicated upon an implied contract if an express contract appears to have existed between the parties with respect to the subject-matter of the litigation.

2. CONTRACTS—*when employment contract terminable at will.*  A contract of employment made for an indefinite period is terminable at the will of either party.

3. CONTRACTS—*when discharge not illegal.*  No recovery can be had upon the ground of a breach of a contract of service by a discharge from service where the contract is indefinite with respect to the period of its duration, inasmuch as such a contract is terminable at the will of either party thereto.

4. INSTRUCTIONS—*must not assume facts in dispute.*  An instruction is erroneous which assumes the existence of facts in dispute between the parties to the litigation.

5. VERDICT—*when not sustained by a preponderance of the evidence.*  A preponderance of the evidence does not exist in favor of the plaintiff, where it appears that the verdict rests upon his own sworn statement denied in every respect by the sworn statement of the defendant, both parties being uncorroborated, and both being of equal credibility.

Assumpsit.  Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.  Heard in this court at the March term, 1907.  Reversed and remanded.  Opinion filed January 27, 1908.

**Statement by the Court.**  Edgar T. Paul, the appellee, sued the appellant, Thomas B. Brougham, as administrator with the will annexed of the estate of Daniel E. Murphy, deceased, and recovered judgment for the sum of $5,000.  The declaration consists of a special count and the common counts.  In the special count it is averred, in substance, that, to wit, May 1, 1899, in consideration that plaintiff would enter into defendant's employ as managing agent of a tract of land in the city of Evanston, in Cook county, for such period as would be required to improve, develop and

fit the same for market, to wit, for one year, for such compensation as his services should be reasonably worth and as he would reasonably deserve, the defendant promised to employ plaintiff in said capacity and to continue him in such employment until such services should be completed, to wit, from the day and year aforesaid; and plaintiff, confiding in said promises, to wit, May 1, 1899, entered defendant's employ in said capacity and on said terms, and continued in the performance of services in and about the purchase of said tract of land, the acquisition of title thereto, the subdivision and resubdivision thereof into lots, blocks, streets and alleys, etc., for a long space of time, to wit, till June 20, 1901, and although plaintiff was then and always has been ready and willing and offered to continue in the performance of said services, the defendant wholly refused to permit him so to do, and, to wit, June 20, 1901, wrongfully discharged him, to plaintiff's damage, etc. The second count is a long drawn out *quantum meruit* count for labor and services, following which are the common counts.

The defendant pleaded the general issue. The jury found the issues for the plaintiff and assessed his damages at the sum of $5,000, and the court overruled defendant's motion for a new trial and rendered judgment on the verdict.

SEYMOUR EDGERTON and GEORGE P. MERRICK, for appellant.

PIERSON & PEASE, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel contend that there was an express contract between the appellee, Edgar T. Paul, and Daniel E. Murphy, deceased, and that such being the case, there can be no recovery, the suit being on an implied contract. Thomas B. Brougham, the appel-

lant, testified that the tract of land in question (which consisted of about thirty acres situated in North Evanston, in Cook county) was purchased by Mr. Murphy for $90,000—$60,000 cash and an equity in a building situated in the city of Chicago, called the Wisconsin building, which equity was estimated to be of the value of $30,000. Mr. Murphy desired to make a resubdivision of the Evanston tract, and sell lots in the resubdivision, and Mr. Brougham testified that, May 9, 1899, Mr. Paul, the appellee, Mr. Murphy, Mr. Bates and he, Brougham, were present in his office in Chicago, and he introduced the matter and said to Mr. Paul that Mr. Bates had recommended him as a good man to prepare the property for sale, and said farther, "We will need some assistance in that matter, and we want to get it in shape, so that the property can be sold. Do you think that you could undertake it?" and Paul said, "Yes, I would be very glad to do that indeed. It is property that I have been trying to get hold of a long time. I know that just as soon as we get it in some neat shape, that I can sell lots very rapidly. Just as soon as the people see that we are starting in to do something there, I know that I can sell the property and sell it very quickly, and to many people in Evanston." Some farther conversation occurred, in reference to procuring some other lots for the subdivision, when witness said to Paul, "Very good, that is just exactly what we want. Now, what basis would you want to perform this work on, for?" and Paul said, "I have such confidence in my ability to sell the property that I am willing to take that on a commission basis." Witness said, "You mean that you will assist us in putting the property in good condition, so that it would be attractive to people, and we can sell on a commission basis?" Paul said, "Yes, I will be willing to do that for 5 per cent." Then Mr. Murphy said, "That is just right. I have always paid by a commission. I am an insurance agent, and I pay commission to agents when they in-

sure lives. Five per cent. will be satisfactory"; after which Mr. Murphy further said: "Now, Mr. Paul, I recognize your infirmity, and that it would be very difficult for you, on account of the infirmity, to attend to the matter of selling property, getting about, etc., and I am willing to pay an additional five per cent. to anybody who assists you in bringing in customers." Mr. Paul's physical condition was such that he had to use a crutch and cane in walking. At the conclusion of Mr. Murphy's statement last above quoted, the following questions to and answers by Mr. Murphy occurred:

"Q. Five per cent. to him and five per cent. to this man to assist? A. In addition, yes.

Q. Making it ten per cent? A. That would be ten per cent.

Q. On sales? A. On sales."

The witness then said to Paul, "Now, we want it distinctly understood there will be a great deal of work you can assist us in before we sell, and that the commission will be in payment of that work," and Paul said, "Certainly, that is what I will do."

Mr. Thomas Bates was present at the conversation testified to by Mr. Brougham, and testified that he introduced Mr. Paul to Mr. Murphy and told the latter that Paul was a real estate man and would be a good man to handle the land, and Mr. Murphy told Paul that he wanted to sell the property, and there was some talk of a resubdivision, and Paul said he would like to handle the property, when Mr. Murphy asked him on what terms, and he, Paul, said he would be willing to take it on a straight commission basis, and Mr. Murphy said he would much prefer that, as he did not intend to pay out money if a man couldn't do him any good, and unless he made sales he was not to receive any compensation, but was to take the property and sell it on a straight commission basis, and Paul told him that was perfectly satisfactory to him; that he would take it and sell it on a straight

commission basis. Witness further testified: "There was talk of five per cent. commission. I don't know that I could recall the exact amount, but there was talk of five per cent. commission, and my recollection is that in lieu of Mr. Paul's assistance in some other matters, such as the subdivision of the property, not his assistance, because he did nothing about that, but with reference to the building of a house or something of that sort, Mr. Murphy was to pay him a little in excess of five per cent. commission. I don't recall but what it might have been five per cent. or some part of it. Certainly, it was a five per cent. basis for selling the property."

The foregoing evidence shows that there was, as claimed by appellant, an express contract between Mr. Murphy, deceased, and the appellee, and that the contract was that appellee should render assistance in getting the property in shape for the sale of lots therein, and was to have the sale of the lots, and that his compensation for his assistance in getting the property in shape so that lots therein could be sold, and for selling lots in the resubdivision, was to be five per cent. commission on prices of such lots as he might sell, and that his compensation was to depend solely on the sale of lots by him. It is admitted that he had, by the contract, the exclusive privilege of selling lots in the resubdivision.

That there was an express contract, as testified by the witnesses Brougham and Bates was not denied by appellee in his testimony on the trial, or at all by any witness, and the testimony of Brougham and Bates that there was such a contract is corroborated by circumstances in evidence.

Mr. Brougham testified that sometime in October, 1900, Mr. Paul, in witness' office, stated to witness that he would rather have the basis of his commission as a part of the profits, instead of selling on a commission basis, and asked witness what he thought about it, and witness said that he would submit the

matter to Mr. Murphy, but was quite certain that he would not approve of it, that Mr. Murphy would go on the basis of the contract that was made with him. A letter from appellee to Mr. Murphy, dated October 25, 1900, was put in evidence by appellant, which letter contains the following:

"As further evidence of my confidence in the result, I also told Mr. Brougham that as regards my compensation I would be willing—in fact prefer—to base it on a portion of what profit you make out of your investment. One reason for this idea is, that if a person works on a straight commission, he is apt to dabble in everything that comes along, while this matter is of such magnitude that it ought to be continually foremost in a person's mind, so that he will take advantage of everything that may arise that can be applied to make the issue a success."

Mr. Brougham further testified that, after October 25, 1900, Mr. Murphy, Mr. Paul and himself had a conversation in witness' office about the matter of the letter of October 25th, and witness said to Mr. Murphy that Paul had suggested to him that he would rather take the matter on the basis of a share of the profits, instead of on a commission basis, and asked Mr. Murphy what he thought about it, and Mr. Murphy said, "I don't want to do that," and there was no change. Early in May, 1899, the appellee entered upon the work of superintending the preparation of the land in question for the sale of lots in it, and appellee's letter of October 25, 1900, shows that, at that date, if not earlier, the work of preparation was complete and the property in a condition to market the lots in it, and yet not until June 27, 1901, did appellee ask for or set up any claim for compensation, and that letter is more in the nature of a pleading letter than the assertion of a claim. The only reasonable conclusion from the evidence is, as we think, that there was an express contract between Mr. Murphy and appellee, as claimed by appellant. There having been an express contract, there cannot be a recovery on

an implied one. Walker v. Brown, 28 Ill. 378; Ford v. McVay, 55 *ib.* 119, 122; Phelps v. Hubbard, 59 *ib.* 79; Compton v. Payne, 69 *ib.* 354; Foley, admr., v. Bushway, 71 *ib.* 380, 391; Siegel v. Borland, 191 Ill. 107, 112; Illingsworth v. Slosson, 19 Ill. App. 612, 614; Ramming v. Caldwell, 43 *ib.* 175, 178.

The authorities cited are conclusive that where there is an express contract there cannot be an implied one.

In Siegel v. Borland, 191 Ill., p. 112, the court say: "An implied contract cannot exist when there is an express one about the same subject-matter. It is only where the parties do not expressly agree that the law implies a promise." The same doctrine was announced in Walker v. Brown, the first case cited *supra,* and has never been departed from in this state. Such also is the law in other jurisdictions in this country and in England.

What has been said renders it necessary, of itself, to reverse the judgment. But, inasmuch as the case must be remanded, we deem it expedient to consider other questions argued by counsel. The appellee never sold a single lot, but Mr. Murphy sold two of the lots, and as it is admitted that appellee, while in charge of the property, had the exclusive privilege of selling, he, under proper pleadings and proof, would be entitled to recover commissions on the sums for which the lots were sold. One of the lots was sold to Mr. Brougham for $1,700. What price the other was sold for, does not appear from the evidence. If it be conceded that, under the common counts and in view of the evidence of an express contract, the plaintiff would be entitled to recover a commission on the sale of the lot to Mr. Brougham, the recovery could not be for more than five per cent. of $1,700 and interest. But the verdict is for $5,000 and so is the judgment. Counsel for appellee mildly suggest that it is not assigned as error that the damages are excessive, and therefore inquiry as to the amount of damages assessed is excluded. It is assigned as error that appellant's motion for a new

trial was overruled, and one of the grounds for a new trial in the written motion is that the verdict is contrary to the evidence. It is clear that the jury were misled by the erroneous theory on which the cause was tried for appellee. Appellee's attorneys introduced evidence tending to prove services of appellee in resubdividing the land into lots, blocks, streets, etc., and improving the same and the value of said services, and asked and the court gave instructions on the theory that there might be a recovery on such evidence, regardless of whether appellee had or not sold any lots.

It is not merely a case of excessive damages assessed in respect to a matter which the jury might lawfully consider. Here the jury have assessed damages with reference to a matter which, in assessing damages, they could not lawfully consider.

Counsel for appellee contend that appellee was wrongfully discharged by Mr. Murphy, and therefore he is entitled to compensation for the services which he performed prior to his discharge, in assisting in the preparation of the land for market. Appellee testified that he, Mr. Murphy and Mr. Brougham met in Mr. Brougham's office a few days before June 27, 1901; that Mr. Brougham did most of the talking, and abruptly notified him that he didn't care to have him in charge of the Evanston property any longer, and that he asked Mr. Brougham if that conclusion was final, and he said it was; that they would prefer to dispense with his services, and that after that date he performed no services; that his services extended from the first Saturday in May, 1899, till June, 1901.

Mr. Brougham testified that June 21, 1901, he, Paul and Mr. Murphy met at his office, and he said to Paul, "Mr. Paul, I wanted you to confront Mr. Murphy about what I am going to talk with you about. I have ascertained that you have deceived Mr. Murphy in the matter, that instead of the Kidder heirs purchasing or taking the equity in the Wisconsin building,

that is not true, and that actually it was taken by a person who represented you solely, and we feel that you have deceived us, and when that came to me through a personal friend of yours, who said you solicited him to take the title for you of that Wisconsin building, I made up my mind that it was time Mr. Murphy was made aware of the fact that all he paid to the Kidder estate was $60,000 in cash, and that the Wisconsin building was taken by you. Mr. Paul said, 'I am astonished; I am completely surprised.' I said, 'What justification can you give to us?' He said, 'I will tell you. It come to a point where the Kidder estate or heirs would not consider taking the Wisconsin building, and it seemed to me that we were getting the property so cheap, and it was a good thing for you, I would take the property myself.' Mr. Murphy said, 'That is very kind of you, Mr. Paul, but you are aware that I would not put any money in Chicago or Evanston property, if by that means I didn't think I was getting rid of the Wisconsin building, which was an annoyance to me.' Well, I said, 'Mr. Paul, we don't wish you, hereafter, to collect rents in the Wisconsin building for us.' He said, 'I have collected part of them only; McKey & Poague have collected a greater portion of the rents.' I said, 'We want the building. We do not choose to have you collect the rents for us in the future,' and he gave an order for McKey &· Pogue to turn the property over to us. Paul said, 'I am completely astonished, and I don't think this is fair treatment. You get the property just in shape so that I would sell it, and then you take it away from me.' I said, 'Mr. Paul, that is not right. We will live up to our contract. Any property there that you sell, Mr. Murphy will pay you what he said he would as commission. You are not discharged.' Mr. Murphy repeatedly said that he would be only too glad to pay Mr. Paul a five per cent commission or anybody else that Mr. Paul could get to purchase.''

The Wisconsin building, mentioned in the evidence last referred to, was not in Evanston, but was situated at the corner of Midway plaisance and Ellis avenue in the city of Chicago, and was not at all involved in the services which appellee was employed to perform in respect to the Evanston property.

It appears from Mr. Brougham's testimony that the sole matter of dispute was appellee's conduct in respect to the Wisconsin building.

It appears from appellee's testimony that the Kidder heirs owned the Evanston property, and appellee acted as their agent in selling it to Mr. Murphy.

The foregoing was all the evidence in respect to the alleged discharge of appellee, and certainly there is not a preponderance of evidence that he was discharged. He, as plaintiff, is personally interested in the result of the suit, whereas Mr. Brougham is interested solely as administrator.

In Peaslee v. Glass, 61 Ill. 94, the court, Mr. Justice Lawrence delivering the opinion, say: "It belongs to the plaintiff to make out a case. The burden of proof is upon him, and where the issue rests upon the sworn affirmation of one party and the sworn denial of the other, both having the same means of information and both unimpeached and testifying to a state of facts equally probable, a conscientious jury can only say that the plaintiff has failed to establish his claim." But, if appellee was discharged, the question arises whether he can recover, as counsel claim, for his services in superintending the putting the property in shape for the sale of lots in it. In all suits for wrongful discharge which have come within our observation, or of which we have knowledge, there have been contracts fixing definitely the time of employment, and the measure of damages in such cases is, what the employe would have earned, by the terms of the contract, had he not been discharged, less what he earned, if anything, between the date of his discharge and the date of the termination of the contract. Manifestly

this is not such a case. Here the appellee seeks to recover on a *quantum meruit,* or what his services performed prior to his alleged discharge were reasonably worth. It must appear, to warrant such recovery, that there was a breach of the contract by the appellant. But the contract which, as we have shown, was proved and not denied, fixed no time for the performance by appellee of the services which he was employed to perform. There is nothing in the contract binding appellee to continue for any time in the performance of the services which he engaged to perform, or binding on Mr. Murphy, deceased, to retain him in his employ. How, then, could his discharge be a breach of the contract?

Appellant's counsel contend that the contract, being indefinite as to time of employment, was determinable at will, citing the following cases: Davis et al. v. Fidelity Fire Ins. Co., 208 Ill. 375; Coffin v. Landis, 46 Penn. St. 426, and Gilbert v Judson, 85 Cal. 105. In Davis v. Fidelity Fire Ins. Co., *supra,* the employment by the Insurance company of Davis & Shepherd as its agents in Chicago was by letter, and the letter fixed no time for the duration of their employment. Davis & Shepherd contended that they were employed for five years; but the court held not, saying: "We have no doubt the parties fully expected that the western agency of the insurance company and the business relation established between them would continue for some time,—perhaps for a period of years. Still, the time the western agency and the business relation between the parties were to continue was left indefinite by the agreement, and the insurance company was not bound to continue its western agency, and neither party, by the terms of the agreement, could require the other to continue the relation thereby established between them longer than such relation was agreeable to both." The court cites, among other cases, Orr v. Ward, 73 Ill. 318, which is directly in point in the present case. See, also, Fidelity Ins. Co. v. Ill. T. & S.

Bank, 110 Ill. App. 92, and cases cited. This is the case affirmed in Davis v. Fidelity Ins. Co. *supra.*

In Coffin v. Landis, *supra,* Landis contracted with Coffin for the sale by Coffin of certain lands of Landis, on which he was about to found a colony, Coffin to have one-half of the clear profit on sales to customers. No time of Coffin's employment was fixed by the contract. The trial judge submitted the case to the jury "on the evidence as a hiring for a year," but reserved the question whether, under the contract between the parties, it was the right of the defendant, at his will, to terminate the arrangement into which they had entered and to discharge the plaintiff." The Supreme Court answered the question affirmatively, saying, among other things: "Considering then the nature of this agreement, its subject-matter and its expressed stipulations, we cannot hold that it binds the defendant to employ the plaintiff, or obliges the plaintiff to remain in the agency any longer than during the will of the parties, without interpolating what they have left out, and without danger of defeating their intentions when the contract was made." The jury in the trial court found for the plaintiff and assessed his damages; but that court subsequently held, on the question reserved, "that the contract was terminable by either party, without notice and without cause," and the Supreme Court affirmed the judgment. We are of opinion that the contract in question was determinable by either of the parties, at will and without notice.

In Gilbert v. Judson, 85 Cal. 105, there was a contract between the parties, by which Gilbert was to sell at a commission of ten per cent. certain lots owned by Judson, the compensation to be paid to Gilbert to be in full for all services which he might render in assisting and advising in the surveying and laying out of the lands for market. The court held that Gilbert's compensation depended on the sale of lots by him, and that as he sold no lots, he was not entitled to

recover the reasonable value of his services rendered in connection with the laying out of the lots.

Instructions 4½, 5 and 6, given at appellee's request, are and each of them is erroneous. Instruction 4½ informed the jury that appellant could not terminate the plaintiff's agency "except for a good and sufficient cause, and without first giving the plaintiff notice that such agency would be terminated within a reasonable time." Instruction 5 is to the effect that if the defendant terminated plaintiff's employment without just cause, plaintiff was entitled to recover for all services performed by him to the time of the termination of his contract. Instruction 6 informed the jury that when no time is fixed within which services are to be completed, neither party to the contract can terminate it without giving to the other a reasonable time in which to fulfill his part of the contract.

The modification by the court of appellant's fourth instruction, and the giving it as modified, was error. The modification informed the jury that if the plaintiff was discharged without just cause, he might recover for such services as the evidence showed he had rendered.

Appellant's fifth instruction, which the court refused to give, is as follows:

"If the jury believe from the evidence in this case that no time was specified for the duration of the contract between the plaintiff and the defendant, testified to in this case, then the court instructs you, as a matter of law, that the defendant had the right to discharge the plaintiff, with or without cause, at any time, without liability therefor."

We think this instruction obnoxious to criticism for two reasons. It apparently assumes that the contract claimed by appellant to have been made was made, which was a question for the jury, and the last part of it, namely, "without liability to the plaintiff therefor," might lead the jury to believe that there could

be no recovery at all, although under the common counts the plaintiff would, as we think, be entitled to recover commissions, as provided by the contract, on $1,700, the price of the lot sold by Mr. Murphy to Mr. Brougham. We cannot say it was error to refuse the instruction. We think appellant's seventh instruction, refused, states the law, and that it was error to refuse it. The instruction is as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff, Paul, made an express contract, he must recover on the express contract as proved, and he cannot recover anything on any implied understanding or for any service not according to the express contract as proved by the evidence, and that an express contract excludes an implied contract."

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*