Manuel Goodman, Plaintiff-Appellant, v. Motor Products Corporation, a New York Corporation, Defendant-Appellee.

**Gen. No. 11,176.**

Second District, Second Division.

September 16, 1959.

Released for publication October 3, 1959.

379

Baker, McKenzie & Hightower, of Chicago (John C. McKenzie and Francis D. Morrissey, of counsel) for plaintiff-appellant.

Thompson, Raymond, Mayer, Jenner & Bloomstein, of Chicago, (Floyd E. Thompson, of counsel) for defendant-appellee.

PRESIDING JUSTICE WRIGHT delivered the opinion of the court.

This is a civil action for damages arising out of a breach of an alleged contract granting to the plaintiff, Manuel Goodman, exclusive rights to distribute in foreign markets appliances of the defendant, Motor Products Corporation. The case has been twice tried before a jury.

The first trial resulted in a jury verdict in the amount of $130,000 in favor of the plaintiff. The trial court thereafter granted defendant's motion for judgment notwithstanding the verdict, and in the alternative, for a new trial. Thereupon an appeal was taken by the plaintiff to this court and this court in Goodman v. Motor Products Corp., 9 Ill.App.2d 57, 132 N.E.2d 356, set aside the judgment notwithstanding the verdict and remanded the case for a new trial. The second trial produced a verdict and judgment for

the plaintiff in the amount of $800, from which judgment plaintiff has taken this present appeal.

Following the remandment of the case for a new trial, the plaintiff filed his first amended complaint consisting of two counts. Count I was for damages arising out of the breach of an express contract and Count II was added for the first time seeking recovery in *quantum meruit* on the theory of a breach of an implied contract. On motion of the defendant, Count II of the first amended complaint was stricken for failure to state a cause of action.

Plaintiff contends that the trial court erred in striking Count II of the first amended complaint for the reason that said count stated a cause of action in *quantum meruit* and that he should have been permitted to elect his theory of recovery at the close of the evidence. Plaintiff also contends that the time that would constitute reasonable or due notice of termination by the defendant of the distributorship is a question of fact for the jury, and that the trial court erred in rejecting evidence offered by the plaintiff on this question and in instructing the jury as a matter of law that the notice of termination given by defendant was reasonable.

The controlling facts were determined by this court and set out at great length in Goodman v. Motor Products Corp., supra. We state herein briefly the facts necessary to a consideration of the legal questions presented on this appeal.

Plaintiff, Manuel Goodman, was an exporter who for most of his life had been engaged in the business of foreign trade. The defendant, Motor Products Corporation, was a New York Corporation licensed to do business in Illinois. It carried on divers lines of manufacturing through numerous divisions and in particular operated a branch in North Chicago, Illinois, known

381

as the Deepfreeze Appliance Division, devoted to the manufacture and sale of Deepfreeze appliances.

In 1940, the defendant entered the freezer and refrigerator market, and one Willard L. Morrison, who had invented the low temperature machine known as the Deepfreeze and had developed the same in the plant located in North Chicago, Illinois, the Deepfreeze Appliance Division of the defendant corporation, was placed in charge of that department of the corporation.

After reading an article which depicted Morrison as the inventor of a new successful food freezer and the head of the organization manufacturing them, the plaintiff called on Morrison in October, 1940, to inquire about selling the machines in the foreign market. After several days of discussion, an oral agreement was reached which was substantially as follows:

Plaintiff was to have the exclusive rights to sell Deepfreeze products in all countries in the world outside of the continental United States so long as he devoted his full time and attention thereto, personally or through corporations organized and controlled by him, and gave adequate representation; plaintiff was to refrain from the distribution and sale of any competitive products so long as the agreement was in effect; plaintiff was to devote his time and best efforts, personally or through corporations organized and controlled by him, exclusively to the distribution and sale of Deepfreeze products in countries of the world outside the continental United States to the exclusion of any other business interest which he might theretofore have had; in the event plaintiff failed to devote his time and best efforts exclusively to the distribution and sale of products manufactured and/or sold by the Deepreeze Appliance Division of the defendant corporation, the agreement would terminate and plaintiff would get out of the appliance business;

plaintiff was to have the right of the use of the word "Deepfreeze" in his corporate name for so long as he did not sell a competitive product. In the event defendant discontinued the manufacture and sale of products through its Deepfreeze Division, although continuing manufacture of other products, the agreement would thereupon terminate.

Plaintiff commenced selling and distributing appliances immediately after he and Morrison had settled the terms governing the conduct of the parties and was given a desk in the North Chicago factory. He continued to distribute the products of the defendant corporation when they were available from 1940 to 1953.

Plaintiff's allocation of the appliances during the war years, 1940 to 1945, was limited, and his orders far exceeded his supply. During the years 1945 to 1950, plaintiff continued to distribute the appliances and was the distributor of the company's products in the foreign market. In the fall of 1951, Ben G. Sanderson, Sales Manager of the defendant corporation, phoned plaintiff to say that he wanted to withdraw Canada from the plaintiff's territory. Plaintiff consented to this withdrawal of Canada from his territory on the basis of being promised by Sanderson he would be given preferential rights to distribute air conditioners, which were to be manufactured by defendant, in tropical and subtropical regions.

In the fall of 1952, a domestic distributor of the defendant corporation, known as Radio City Distributing Company, of Dallas, Texas, sold a one-half carload of Deepfreeze freezers and refrigerators to Jose R. Santos, an appliance dealer in Monterrey, Mexico. At the direction of said Radio City Distributing Company, the defendant corporation caused the shipment of these appliances to Laredo, Texas, for transportation across the border. In the early part of 1953, one Joe

383

Davis, District Manager of the defendant corporation in Texas, made arrangements with the same Jose R. Santos, the former customer of Radio City Distributing Company, to act as distributor for the defendant corporation in Mexico and sold a quantity of appliances to him for resale in Mexico.

The defendant notified the plaintiff in writing, by registered mail, in July of 1953 that his distributorship was terminated as of November 28, 1953, and refused subsequent to that time to sell the plaintiff any of its products.

■ There can be no implied contract or recovery in *quantum meruit* where an express contract exists between the same parties with respect to the same subject matter. An early leading case on this point is Walker v. Brown, 28 Ill. 378, decided by our Supreme Court in 1862. The opinion in that case reveals that it was then the settled law in this country and in England that a contract cannot arise by implication where there is an express contract between the parties for the same thing, and at page 383 of 28 Ill., the Supreme Court stated:

"As in physics, two solid bodies cannot occupy the same space at the same time, so in law and common sense, there cannot be an express and an implied contract for the same thing, existing at the same time. This is an axiomatic truth. It is only when parties do not expressly agree, that the law interposes and raises a promise."

The rule laid down in the Walker case, supra, has been followed and reiterated in many cases down to the present. Borrowdale v. Sugarman, 347 Ill. App. 390, 107 N.E.2d 45; Deitchman v. Korach, 330 Ill. App. 365, 71 N.E.2d 367; Brougham v. Paul, 138 Ill. App. 455, and Klein v. Chicago Title & Trust Co., 295 Ill. App. 208, 14 N.E.2d 852. The conclusion in these cases is that only when parties do not expressly agree, or

where an express agreement is unenforceable, the law imposes and raises a promise to pay for services performed or goods furnished under circumstances justifying an implied agreement to compensate.

This court on the former appeal held that the contract proved as existent between the plaintiff and defendant was indefinite as to the length of time it was to operate and hence constituted a contract terminable upon reasonable notice insofar as it was executory. This court, however, further decided on the first appeal that as far as the contract had been executed there was an enforceable express agreement governing their relations and that they operated pursuant to the terms of this agreement until it was terminated by the defendant. In the Goodman case, supra, 9 Ill. App.2d 57, 85, 132 N.E.2d 356, 370, this court in deciding that an express agreement existed stated:

"Assuming that the contract was terminable upon giving reasonable notice, the evidence, when taken in its light most favorable to the plaintiff discloses that the contract was recognized by defendant in its letter of July 29, 1953; and the evidence further shows that the contract was breached by defendant prior to notice of termination, and prior to the date of termination as fixed by defendant in its said notice. It appears that direct sales into Mexico were made by defendant, and this constituted an invasion of plaintiff's exclusive territory."

█ The previous opinion of this court found and the record now before us discloses that there was an express agreement between plaintiff and defendant whereby a distributorship was established; that certain territory was assigned to the plaintiff; that plaintiff would purchase his requirements of defendant's goods for resale and would pay for the goods in cash at the time of each purchase; that plaintiff would sell the goods in the export market on his own terms

and to whomever he pleased, and that plaintiff would pay his own business expenses. If plaintiff bought goods from the defendant for resale and then sold them at a profit he got his profit, on the other hand, if defendant bought no goods and made no sales, he made no profit. Since the express contract alleged by the plaintiff and found to exist by the opinion of this court on the former appeal fixed the rights and obligations of the parties, there can be no contract by implication that establishes different rights and obligations. It, therefore, follows that the trial court properly dismissed Count II of plaintiff's first amended complaint.

The plaintiff next contends that the trial court committed error in instructing the jury that the notice of termination of the distributorship was reasonable. This jury instruction was not specifically set out in the post-trial motion of the plaintiff. It is not disclosed in the original and supplementary abstracts of the plaintiff whether or not plaintiff objected to this instruction at the trial court's conference on jury instructions and in fact, there is no indication in the said abstracts as to who tendered the instructions which were given and refused. This instruction is therefore not properly before us for review.

The law is well settled that the post-trial motion must set forth specifically the ground upon which relief is sought, McKinney v. Cratty, 18 Ill. App.2d 561, 153 N.E.2d 113, and where the error urged relates to the giving of an instruction the post-trial motion must specify the particular instruction to which exception is taken. Sykes v. Bontz, 18 Ill.App. 2d 129, 151 N.E.2d 133; Pajak v. Mamsch, 338 Ill. App. 337, 87 N.E.2d 147. There is nothing in the abstracts to show that plaintiff's attorney objected to any of the instructions which were given by the court. In order to assign as error the giving of an instruc-

tion, there must first be an objection made in the trial court to the giving of such instruction. Madison v. Wigal, 18 Ill.App.2d 564, 153 N.E.2d 90. The abstract should indicate who tendered the instructions that were given or refused. It has recently been stated that the abstract is the pleading of the party in a court of review and what is sought to be reviewed must be contained in that pleading. Richman Chemical Co. v. Lowenthal, 16 Ill.App.2d 568, 149 N.E.2d 351.

■ Plaintiff next contends that the trial court erred in rejecting evidence offered by the plaintiff on the question of what constituted reasonable or due notice of termination by the defendant of the distributorship. Plaintiff in his brief contends that the trial court rejected evidence offered by plaintiff on the issue of what constituted reasonable notice of termination of the distributorship, but fails to give the abstract citation disclosing that any such offer was made or that the trial court made any such ruling. We do not find in the abstract or supplemental abstract any offer of evidence which called for such ruling. The party prosecuting an appeal in this court shall furnish an abstract of the record on appeal, referring to the pages of the record by numerals on the margin. An abstract must be sufficient to present the errors relied on for reversal.

■■ This court cannot hold that the trial court was in error in rejecting evidence without having before it the ruling of the court on objections to specific questions or on an offer of evidence. It is not the province of this court to search the record for the purpose of finding errors on which to predicate a reversal. Gyure v. Sloan Valve Co., 367 Ill. 489, 11 N.E.2d 963; Burk v. Weber, 285 Ill. App. 391, 2 N.E. 2d 121. The abstract must contain sufficient parts of the record to fully present every error relied on

and the substance of the record should be so abstracted that it will not be necessary to resort to the record to determine the issues presented, Department of Finance v. Bode, 376 Ill. 374, 33 N.E.2d 586.

Assuming that the trial court rejected evidence offered by the plaintiff as to what constituted reasonable or due notice of termination by the defendant of the distributorship, we are of the opinion that no error was committed for the reason that this matter was determined by this court on the first appeal. This court on the first appeal considered whether the distributorship agreement was one terminable at will and whether it had been duly terminated and both questions were answered in the affirmative. In Goodman v. Motor Products Corp., supra, the court stated at page 68 of the opinion "there is no evidence that Goodman agreed to devote his time and efforts to the selling for any period of time. It is admitted that Goodman had due notice of the termination."

When this cause was remanded for a new trial, the issue which was to be submitted to the jury was the amount of damages due the plaintiff as a result of the breach of the distributorship agreement prior to its termination. This court on the former appeal found that the evidence showed that the contract was breached by defendant prior to the notice of termination, and prior to the date of termination as fixed by defendant in its notice.

For the reasons herein stated, the judgment of the Circuit Court of Lake County is affirmed.

Judgment affirmed.

CROW and SOLFISBURG, JJ., concur.