2025 IL App (1st) 250338-U

No. 1-25-0338

Order filed November 7, 2025

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| HIGH CONCEPT HOLDINGS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Law Division. |
| | ) | |
| v. | ) | No. 2024 L 000090 |
| | ) | |
| PRECISION BODY WORKS, INC., | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendant-Appellee. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court erred in dismissing plaintiff's breach of contract claims where the perpetual contracts were terminable at will and the terms could be enforced.

¶ 2    Plaintiff High Concept Holdings, Inc., appeals the circuit court's dismissal of its complaint in this breach of contract case against defendant Precision Body Works, Inc. At issue is whether the circuit court erred in concluding that the contracts were void as against public policy and dismissing the complaint. For the following reasons, we reverse and remand.

¶ 3                                   I. BACKGROUND

¶ 4      Precision, an auto repair shop, entered a series of five contracts with High Concept. High Concept maintains relationships with various auto insurance companies. The contracts obligated High Concept to connect Precision with five different insurance entities to arrange for auto repair jobs. In exchange, Precision would send High Concept $50 per job and 10% of Precision's gross profits from the jobs each month.

¶ 5      The first four contracts were "for a perpetual duration." The fifth contract was to continue "for so long as [Precision] maintains a business relationship with [Volkswagen's Certified Collision Repair Facility]." Over several years, Precision paid High Concept approximately $1 million under the contracts. In July 2023, High Concept alleged it discovered from the insurance companies that some vehicles were missing from Precision's monthly payment sheets. In September, High Concept demanded to see Precision's books, but Precision refused. By October, the contracts were terminated.

¶ 6      High Concept filed a complaint against Precision alleging Precision breached the parties' contracts by failing to make payments owed prior to termination. Precision moved to dismiss the complaint under section 2-615 of the Code of Civil Procedure, arguing that the contracts were void as a matter of public policy and that High Concept did not allege damages. 735 ILCS 5/2-615 (West 2024). The circuit court granted the motion, reasoning that the contracts were void due to their perpetual duration. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 7                                   II. ANALYSIS

¶ 8      High Concept argues the circuit court erred in holding the contracts unenforceable pursuant to public policy. High Concept concedes that Precision was allowed to terminate the contracts but

contends it is still entitled to payments that accrued prior to the contracts' termination. Precision argues the contracts are unenforceable because public policy disfavors both perpetual contracts and kickbacks. Alternatively, Precision argues High Concept failed to allege damages. We review the dismissal of a complaint *de novo*. *Cowper v. Nyberg*, 2015 IL 117811, ¶ 12.

¶ 9 Illinois courts strongly favor the freedom of contract. *In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶ 39. However, courts will not enforce agreements that are contrary to public policy as reflected in Illinois's constitution, statutes, and judicial decisions. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989). Perpetual contracts are contrary to public policy because "few commercial concerns remain viable for even a decade" and "flexibility [is] needed to respond to market demands." *Jespersen v. Minnesota Mining & Manufacturing Co.*, 183 Ill. 2d 290, 295 (1998). Rather than being void, contracts for a perpetual duration are terminable at the will of either party. *Id.* at 295-96.

¶ 10 Here, the first four contracts read: "<u>TERM</u>: The term of this Agreement shall be for a perpetual duration." These contracts, therefore, were terminable at will.

¶ 11 Even when a contract is not explicitly perpetual, the contract is terminable at will if there is not "a specific objective event that renders the agreement sufficiently definite in duration." (Internal quotation marks omitted.) *Rico Industries*, *Inc. v. TLC Group, Inc.*, 2014 IL App (1st) 131522, ¶ 2. For example, a contract clause that reads "this agreement will remain in effect for as long as [the defendant] serves [the plaintiff's] customers cannot be construed as an objective event ***." (Emphasis and internal quotation marks omitted.) *R.J.N. Corp. v. Connelly Food Products, Inc.*, 175 Ill. App. 3d 655, 660 (1988). Rather, this language indicates a contract of indefinite duration since it is based on the defendant's decision not to serve the plaintiff's customers at some

point in time which cannot be ascertained. *Id*. In fact, this decision may never happen. *Rico Industries*, 2014 IL App (1st) 131522, ¶ 27.

¶ 12    Instead of being expressly perpetual, the fifth contract endures "for so long as [Precision] maintains a business relationship with [Volkswagen's Certified Collision Repair Facility] that results from [High Concept's] services \*\*\*." Further, Precision could terminate the agreement "at any time upon the permanent termination of [Precision's] business relationship with [Volkswagen] and providing written notice to [High Concept]." In other words, the fifth contract was to remain in effect for as long as Precision decided to continue to service vehicles from Volkswagen. Precision's decision to end its business agreement with Volkswagen is not a specific objective event that gives the contract definite duration. The timing of this decision cannot be sufficiently ascertained and may never come, meaning Precision would be required to pay High Concept in perpetuity. The fifth contract, therefore, was also terminable at will.

¶ 13    A contract that is terminable at will gives both parties the right to terminate the agreement for any reason without being liable for a breach of contract. *Jespersen*, 183 Ill. 2d at 296. The contract's provisions, however, can still be enforced. See *Goodman v. Motor Products Corp.*, 22 Ill. App. 2d 378, 384-85 (1959). Though terminable at will, the contract is binding on the parties until it is terminated. *Id.* Obligations incurred prior to termination are, therefore, enforceable. *Id.*

¶ 14    As High Concept concedes, Precision was entitled to terminate the contracts at will. The contracts, however, were binding on High Concept and Precision until terminated, and any obligations incurred prior to termination are enforceable.

¶ 15    Precision argues that under *High Concept Holdings, Inc. v. CarMedix, Inc.*, 2019 IL App (1st) 18-0075-U, a case involving High Concept and the same contract scheme at issue here, High

Concept's right to any commissions ended when the contracts were terminated. That case, however, recognized a distinction between the right to commission after termination of a perpetual contract and the obligation to pay commissions earned before termination:

> "[A] commission contract that is deemed 'terminable at will' under Illinois law, because it has an infinite duration, should be read to allow commissions *already earned* to continue to be paid. The contract is 'terminable' in that one party can cut off the contractual relationship going forward—meaning no more 'finding,' no more new clients—but *not* cut off an obligation *already* incurred." (Emphasis in original.) *Id.* ¶ 41.

The parties did not dispute that CarMedix owed payment for obligations incurred prior to termination. *Id.* ¶ 27. Instead, the parties disputed whether CarMedix could cut off High Concept's right to payments after termination, even if it continued to service cars from High Concept's contacts. *Id.* ¶ 32. That is not at issue here. As discussed in *CarMedix*, Precision is still obligated to pay commissions earned prior to the contracts' termination, and this obligation is enforceable. See *Id.* ¶ 41.

¶ 16    In addition to a valid, enforceable contract, a plaintiff claiming breach of contract must allege performance of the contract by the plaintiff, a breach by the defendant, and damages resulting from the breach. *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 286 (2007). "The purpose of damages for breach of contract is to put the injured party in the position it would have been in had the contract been fully performed." *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 546 (2011).

¶ 17    High Concept alleged that it fully performed under each contract by working with its insurance contacts to send Precision auto repair jobs. Additionally, the complaint alleged Precision has not paid High Concept under the contracts since July 2023, even though the contracts were not effectively terminated until October 2023. High Concept claims Precision owes around $250,000.

Taking these allegations as true, High Concept adequately alleged that before the contracts were terminated, Precision breached the contracts by failing to make payments for vehicles from July to October 2023, and High Concept suffered damages when it was not paid what it was owed. See *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 23 (explaining that the court accepts all well-pleaded facts in the complaint as true and draws all reasonable inferences in the plaintiff's favor when reviewing a 2-615 motion to dismiss); *Westlake Financial Group, Inc. v. CDH-Delnor Health System*, 2015 IL App (2d) 140589, ¶¶ 51-53 (explaining damages are speculative at the motion to dismiss stage when their existence, as opposed to the amount, is uncertain).

¶ 18    As to the first contract, the complaint further alleged that Precision hid payments from High Concept that were due up through 2023. Although High Concept argues in its briefs that Precision hid payments under all five contracts, the complaint only alleged Precision hid payments under the first contract. See *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997) (explaining that section 2-615 looks to the legal sufficiency of the complaint). This was sufficient to allege that Precision also breached the first contract by not making full payments through 2023, and High Concept was damaged by not receiving all it was owed. High Concept, therefore, stated a claim for breach of contract.

¶ 19    Precision argues that the first contract should not be enforced because it is not signed. An enforceable contract requires mutual assent to the terms of the agreement, usually indicated by the parties signing the written contract. *Hedlund and Hanley, LLC v. Board of Trustees of Community College District No. 508*, 376 Ill. App. 3d 200, 206 (2007). When a written contract is not signed, the parties' intent, shown by their acts or conduct, determines whether the contract is binding. *Id.*

The complaint alleged that the parties entered the first contract in 2007, High Concept fully complied with its terms, Precision received numerous repair jobs under the contract, and Precision sent High Concept monthly payments and reports under the contract for many years. The complaint alleged that both parties acted in accordance with the terms of the contract, showing their intent that the contract be binding. The lack of signatures therefore does not render the first contract unenforceable.

¶ 20    Precision argues that the contracts also violate public policy because the commissions paid under the contracts constitute illegal kickbacks. The law, however, generally allows the payment of a "finder's fee" where the party receiving the fee introduces the party paying the fee to a third party. See *Business Development Services, Inc. v. Field Container Corp.*, 96 Ill. App. 3d 834, 842 (1981) ("A finder is defined as an 'intermediary who contracts to find, introduce and bring together the parties to a business opportunity, leaving the ultimate negotiations and consummation of the business transaction to the principal.' *** [T]o earn a commission, a finder must accomplish the purpose for which his services were engaged and establish that the services were the procuring cause of the transaction."); see also A. L. Schwartz, Annotation, *Validity, Construction, and Enforcement of Business Opportunities or "Finder's Fee" Contract*, 24 A.L.R.3d 1160 (2021) ("A business opportunity contract will be enforced when it contains all the elements which enter into the formation of any contract."). For example, a finance consultant can introduce a company seeking investors to a venture capital firm and receive a fee for the introduction, see, *e.g.*, *Piatti v. Industrial Lasers, Inc.*, 930 F.2d 34 (10th Cir. 1991) (table) (unpublished disposition), or an executive recruiter can connect businesses and job seekers for a fee, see, *e.g.*, *CB Legal Search, L.L.C. v. Lewis Brisbois Bisgaard & Smith, L.L.P.*, 441 F. App'x. 251, 252-53 (5th Cir. 2011).

There is nothing improper about such an arrangement.

¶ 21    With a kickback or commercial bribe, in contrast, the recipient of the payment does not merely make an introduction but rather makes or influences the decision to award business to a particular vendor. *Cohen v. American Security Insurance Co.*, 735 F.3d 601, 611 (7th Cir. 2013) (explaining "the traditional understanding of a kickback" is when "an agent, charged with acting for the benefit of a principal, accepts something of value from a third party in return for steering the principal's business to the third party"). Thus, the kickback actually corrupts the decision-making process, and the payment frequently results in a conflict of interest or breach of a fiduciary duty. *Id.* ("The defining characteristic of a kickback is divided loyalties."); *Mantek Division of NCH Corp. v. Share Corp.*, 780 F.2d 702, 705 n.3 (7th Cir. 1986) ("The essence of commercial bribery is that the seller is secretly giving a bribe to the customer's agent to induce the agent to betray his principal (the customer) by purchasing the seller's product even though it is not in the customer's best interest."). Thus, a commission paid to a decision-maker at an insurer to steer repair business to a particular shop would constitute a kickback. Nothing like that is alleged here.

¶ 22    Precision's citation to various anti-kickback statutes is equally unavailing. See 740 ILCS 92/5 (West 2014) (insurance fraud); 805 ILCS 5/8.70 (West 2014) (corporate kickbacks and bribery); 225 ILCS 85/23 (West 2002) (pharmacy practice); 305 ILCS 5/8A–3 (West 2002) (public aid); 305 ILCS 5/8A–16(5) (West 2002) (healthcare); 720 ILCS 5/33E–7 (West 2002) (public contracts). In the areas of health care, corporate law, and public contracting, the Illinois General Assembly has specifically prohibited the payment of fees or conveyance of something of value in an effort to curb vendor fraud. These statutes, however, have no application to the relationship here between a contractor and an auto body shop.

¶ 23                                    III. CONCLUSION

¶ 24    The judgment of the circuit court of Cook County is reversed, and the case is remanded.

¶ 25    Reversed and remanded.