FIRST DIVISION
FILED: MAY 16, 2011

NOS. 1-10-0427 and 1-10-1348, cons.

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PALMOLIVE TOWER CONDOMINIUMS, LLC, a Delaware limited liability company, | ) ) ) | APPEAL FROM THE CIRCUIT COURT OF COOK COUNTY |
| Plaintiff-Appellee | ) ) | |
| v. | ) ) | No. 09 CH 01399 |
| MARY SIMON, as Trustee of the Marcy Simon Revocable Trust dated September 19, 1991, and MARC SIMON | ) ) ) ) | HONORABLE |
| Defendants-Appellants. | ) ) | STUART E. PALMER JUDGE PRESIDING. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Hall and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

The defendants, Mary and Marc Simon, appeal from the circuit court judgments dismissing their counterclaims against the plaintiff, Palmolive Tower Condominiums, LLC, and granting the plaintiff judgment on the pleadings on count I of its complaint. For the reasons that follow, we affirm the trial court's judgment dismissing the defendants' counterclaims, and we dismiss the defendants' appeal of the trial court's judgment on count I of the plaintiff's complaint.

In its complaint, the plaintiff alleged that it and the defendants entered into a condominium purchase agreement in July 2003, before the plaintiff had finished construction on the site.

NOS.  1-10-0427 and 1-10-1348, cons.

That agreement provided as follows:

"4(c)(i) If Seller fails to substantially complete the Unit on or before December 31, 2005 ***, Purchaser, as its sole remedy for such failure, shall have the right to terminate this Agreement ***.  In the event Purchaser exercises its Right to Terminate hereunder, Purchaser shall be only entitled to a refund of the Earnest Money and all interest earned thereon and this Agreement shall terminate. ***

(ii) Notwithstanding the foregoing, if the Closing does not occur by August 31, 2005, Seller shall, as compensation for the delay, at Purchaser's option, (A) pay to Purchaser [$7,500] per month ***, or (B) provide to Purchaser [an apartment and parking].  If Purchaser is entitled to receive (A) or (B) under this paragraph ***, such shall be provided by Seller from July 1, 2005[,] through and including the earlier of *** the Closing Date *** or *** the effective date of the Purchaser's termination of [the Agreement]."

According to the plaintiff's complaint, on January 17, 2006, it and the defendants entered into a closing agreement, which provided as follows, in relevant part:

"Whereas, Seller has not yet completed construction of the *** Building ***; and

Whereas, *** purchaser is not obligated to close the purchase of the Premises until such [construction] has been

2

completed; and

Whereas, the parties have agreed to close the purchase and sale of the Premises in accordance with and in material reliance upon the provisions of this Closing Agreement.

Now, therefore, the parties agree as follows:

* * *

2. At closing, [part of] the sales proceeds shall [be deposited into escrow].  Seller represents and warrants to Purchaser that Seller has completed construction *** except for construction to be performed on [two floors of the building on which the plaintiffs' condominium is not located] ***.  The escrowed funds shall be held in escrow until [the construction is completed, in which case the seller will receive the funds, or until three years pass, in which case the purchaser will receive the funds]. ***

3. Seller represents and warrants to Purchaser that Seller has heretofore closed the sale of three *** condominium units in the Building, has signed contracts with no less than 10% earnest money deposited for the sale of [83] condominium units and there are no more than [15] condominium units remaining unsold.

4. Seller represents and warrants to Purchaser that it is Seller's good faith belief that construction of no less than 25% of the condominium units in the Building will be completed by March 1, 2006, 50% by June 1, 2006, 75% by September 1,

2006[,] and 100% by December 1, 2006.

5. At closing, Purchaser will receive a credit of [$25,000] ***."

The plaintiff alleged, and the defendants in their answer admitted, that the defendants took possession of their condominium on the date of the closing agreement and began residing there just over one week later.  However, according to the complaint, even after the plaintiff obtained the required construction approval for the project, the defendants declined to release the escrow money to the plaintiff.  The plaintiff's complaint contained three counts, seeking a declaration of the plaintiff's entitlement to the escrowed funds, damages for breach of the parties' agreements, and specific performance of the parties' agreements.

The defendants thereafter filed counterclaims against plaintiff for breach of contract, negligence, and fraud.  The counter-complaint contained the following allegations:

12. When informed by [the plaintiff] that the Unit was habitable, the [defendants] agreed to close on January 17, 2006.

\* \* \*

16. By closing on January 17, 2006, the [defendants] gave up their rights to receive a payment of $7,500 per month ***.

\* \* \*

20.  On information and belief, the representation and warranty [the plaintiff set out in the closing agreement,

4

NOS. 1-10-0427 and 1-10-1348, cons.

regarding the construction and sales of other units] was untrue and therefore breached." The counter-claim then detailed the defendants' reasons for believing that sales and construction progress were not as the plaintiff had warranted and setting forth the plaintiff's involvement with the sales and construction processes. According to the counter-claim, construction on the project was not finally finished until October 2008.

In their count for breach of contract, the defendants alleged that the plaintiff's failure to honor the warranties made in the closing agreement "[s]ubjected the [defendants] to the risk that the project would fail," "[c]aused the [defendants] to be inconvenienced by [the plaintiff's] construction work including lack of access to all elevators, dirt, dust and debris in their Unit, on their deck and their cars, the cost of which was not less than $10,000.00," caused the defendants to "give up what was essentially a free option on [the property]" due to their right to terminate the agreement, caused the defendants to "[give] up the opportunity to earn interest on [the cost of the condominium] *** and [begin] paying taxes and assessments," caused the defendants to begin using a property tax freeze earlier than if they had waited to close, and caused them to forgo their right to a monthly $7,500 credit.

In their fraud count, the defendants alleged that the plaintiff knew the representations in the closing agreement to be

5

NOS. 1-10-0427 and 1-10-1348, cons.

false but made them anyway in an attempt to induce the defendants' agreement to close. The fraud count alleged that the defendants were damaged in the same ways described in the breach of contract count.

The plaintiffs filed a motion to dismiss the defendants' counterclaims as well as a motion for judgment on the pleadings. In January 2010, the circuit court granted the plaintiff's motion to dismiss the counterclaims in an order that also stated, "This is a final and appealable order there being no just reason to delay enforcement or appeal." The defendants thereafter filed a notice of appeal relating to that order, and the matter was docketed in this court as case number 1-10-0427. In April 2010, the circuit court granted the plaintiff's motion for judgment on the pleadings in part, by granting judgment on the first count of the plaintiff's multi-count complaint. The order stated, "This order is final and appealable." The defendants filed a second notice of appeal challenging the April 2010 order. We docketed the matter as case number 1-10-1348, and we later consolidated it for decision with the defendants' prior appeal.

We begin by addressing the defendants' appeal in case number 1-10-1348. Although the parties agree that we have jurisdiction over that appeal, we have an independent duty to consider the issue and dismiss the appeal where our jurisdiction is lacking. *Mund v. Brown*, 393 Ill. App. 3d 994, 996, 919 N.E.2d 1225 (2009). We conclude that we do not have jurisdiction over this appeal.

6

NOS. 1-10-0427 and 1-10-1348, cons.

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. Sup. Ct. R. 304(a) (eff. Feb. 26, 2010). Here, the defendants seek to appeal an order that resolved only one count of the plaintiff's multi-count complaint and therefore unquestionably resolved fewer than all of the claims between the parties. Accordingly, under Rule 304(a) the order was not appealable unless it was accompanied by the circuit court's express written finding that there was "no just reason for delaying either enforcement or appeal or both." For their stance that the circuit court's April 10 order is appealable, the parties cite the court's statement that the order was "final and appealable." That order, however, contains no reference either to Rule 304(a), to the justness of delaying enforcement or appealability, or to the propriety of immediate appeal.

Our supreme court does not require that a circuit court parrot Rule 304(a) exactly in order to invoke it. Indeed, in *In re Application of Du Page County Collector*, 152 Ill. 2d 545, 605 N.E.2d 567 (1992), the court explained that an order accompanied by language referencing only "appealability" or "enforceability" may be reviewed under Rule 304(a) depending on the circumstances. According to the supreme court in *Du Page County Collector*, "where

7

the written finding makes [a judgment that confers a legal right capable of enforcement] immediately enforceable and it is clear from the record that Rule 304(a) is intended to be invoked, reference to appealability is unnecessary as surplusage." *Du Page County Collector*, 152 Ill. 2d at 549. On the other hand, judgments, such as dismissals of claims, that leave nothing to be enforced may be appealed pursuant to a finding "that there is no just reason to delay appeal." *Du Page County Collector*, 152 Ill. 2d at 549. (Rule 304(a) was later amended to reflect the holding in *Du Page County Collector* by stating more clearly that a circuit court must find that there is no just reason for delaying "either" enforcement or appeal "or both." Ill. S. Ct. R. 304(a), Committee Comments (adopted Dec. 17, 1993).)

Although it created some leeway for the language that may be used to invoke Rule 304(a), the supreme court in *Du Page County Collector* stopped short of indicating that Rule 304(a) does not require some reference to immediate enforcement or appealability or the justness of delaying enforcement or appealability. In fact, the supreme court was careful not to excise those qualifications from its articulation of Rule 304(a)'s requirements. See *Du Page County Collector*, 152 Ill. 2d at 549 ("It would be proper in such cases to find only that there is no reason to delay appeal from such a judgment"); 152 Ill. 2d at 550 ("where it is clear *** that review is sought *** pursuant to Rule 304(a) and the judgment confers a legal right capable of enforcement, the required written

8

finding is sufficient \*\*\* if it refers to either the judgment's *immediate* enforceability or its *immediate* appealability" (emphases added)); see also *Burnham Management Co. v. Davis*, 302 Ill. App. 3d 263, 269, 704 N.E.2d 974 (1998) (citing *Du Page County Collector* for the proposition that a written finding triggers Rule 304(a) "only if it refers either to the judgment's immediate enforceability or its immediate appealability").

The supreme court had good reason for retaining the requirement that a court refer to immediate enforceability or appealability or to the justness of delaying either.  The rationale underlying Rule 304(a) is that it allows appeals to be taken before the final disposition of a case where the circuit court considers an immediate appeal to be appropriate.  *Matson v. Department of Human Rights*, 322 Ill. App. 3d 932, 937, 750 N.E.2d 1273 (2001). Thus, Rule 304(a) allows a circuit court to limit piecemeal appeals yet still allow early appeals when, in its discretion, doing so "would have the effect of expediting the resolution of the controversy, would be fair to the parties, and would conserve judicial resources." *Matson*, 322 Ill. App. 3d at 938.  A circuit court's declaration that an order is "final and appealable," without reference to the justness of delay, or even reference to immediate appealability, evinces no application of the discretion Rule 304(a) contemplates.  See *Matson*, 322 Ill. App. 3d at 939. Instead, absent some other indication from the record that the court intended to invoke Rule 304(a) (see *Coryell*, 245 Ill. App. 3d

9

at 5 (noting that court was not asked to make a Rule 304(a) finding and that Rule 304(a) was not referenced in the court's order)), a circuit court's declaration that an order is "final and appealable" amounts to nothing more than a non-binding interpretation.  See *Com-Co Ins. Co. v. Service Industry Agency, Inc.*, 321 Ill. App. 3d 816, 819, 748 N.E.2d 298 (2001) (citing a supreme court decision discussing only finality for the proposition that the "trial court's declaration of finality and appealability is not enough, standing alone, to make an order appealable").

For these reasons, a circuit court order accompanied by language indicating that it is "final and appealable," but not referencing immediate appeal, the justness of delay, or Rule 304(a), does not trigger the rule.  See *Coryell v. Village of La Grange*, 245 Ill. App. 3d 1, 5, 614 N.E.2d 148 (1993) (discussing *Du Page County Collector* and holding that circuit court's finding that an order was "final and appealable," without reference to justness of delay, did not trigger Rule 304(a)).  See also *Hopkins v. Illinois Masonic Medical Center*, 211 Ill. App. 3d 652, 654, 570 N.E.2d 575 (1991) (prior to the supreme court's decision in *Du Page County Collector*, holding that circuit court finding that order was "Final and Appealable" was insufficient); *Lurz v. Panek*, 166 Ill. App. 3d 179, 181-92, 519 N.E.2d 1110 (1988) (same); *Hamer v. Lentz*, 155 Ill. App. 3d 692, 695, 508 N.E.2d 324 (1987) (same).  Because the April 2010 order did none of those things, it was not appealable.

NOS. 1-10-0427 and 1-10-1348, cons.

In so holding, we recognize our departure from *Com-Co Insurance Agency, Inc.* In that case, this court, confronted with what appears to have been the same circuit court language we encounter here, concluded that a circuit court declaration that an order was "final and appealable" sufficed to invoke Rule 304(a). See *Com-Co Insurance Agency, Inc.*, 321 Ill. App. 3d at 819 (summarizing, but not quoting, relevant language). The court reached this conclusion based on the following reasoning:

> "The trial court's declaration of finality and appealability is not enough, standing alone, to make an order appealable. [Citation.] If the order finally disposed of the rights of the parties on some definite and separate branch of the controversy, then the court's statement of enforceability or appealability makes the order immediately appealable under Supreme Court Rule 304(a). [Citations.]
>
> The court's language need not match the wording in Rule 304(a) precisely. '[W]here appeal is sought pursuant to Rule 304(a) from a judgment which defeats a claim or is in the nature of a dismissal, the written finding is sufficient only if it refers to appealability.' [Citation to *Du Page County Collector*].
>
> Here, the court appropriately referred to appealability. We agree with the trial court's implicit holding that the claim *** is sufficiently separable *** for immediate appeal." *Com-Co Insurance Agency, Inc.*, 321 Ill. App. 3d at 819.

11

We find this reasoning to be unpersuasive, for three reasons. First, the reasoning, which begins with a statement that a circuit court declaration of appealability is not controlling, but ends by saying that a reference to appealability is sufficient, is internally contradictory.  Second, the reasoning oversimplifies, and thus misstates, the holding from *Du Page County Collector*, which, as explained above, held that a circuit court's reference to appealability, without a reference to enforceability, could invoke Rule 304(a), but did not hold that the reference to appealability could invoke Rule 304(a) without any reference to immediacy or the justness of delaying the appeal.  Third, the reasoning relies on what it terms a circuit court's "implicit holding" that Rule 304(a) applied; the language of Rule 304(a), however, calls emphatically for "an express" finding.  Ill. Sup. Ct. R. 304(a) (eff. Feb. 26, 2010).  For these reasons, we depart from *Com-Co Insurance Agency, Inc.* and instead hold to our own interpretation of Rule 304(a) as requiring something more than a circuit court declaration that an order is "final and appealable."  Because the April 2010 order the defendants seek to appeal in case number 1-10-1348 stated only that it was "final and appealable," it was not appealable under Rule 304(a).  As a result, we have no jurisdiction to review that order, and we must dismiss the defendants' appeal in case number 1-10-1348.

Unlike the April 2010 order in case number 1-10-1348, the January 2010 order the defendants seek to appeal in case number 1-

12

NOS. 1-10-0427 and 1-10-1348, cons.

10-0427, contains the language required by Rule 304(a), and therefore constitutes an appealable order that we have jurisdiction to review. The defendants ask that we reverse that order, which granted the plaintiff's motion to dismiss on the grounds that the defendants counterclaims failed to state causes of action and failed to allege damages.

Although it was not so labeled, the plaintiff's motion to dismiss presumably was brought pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2008)). A motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of a complaint by alleging defects appearing on the face of the complaint. *Irizarry v. Illinois Central R.R. Co.*, 377 Ill. App. 3d 486, 488, 879 N.E.2d 1007 (2007). Such a motion should be granted if the complaint does not allege sufficient facts to state a cause of action. *Irizarry*, 377 Ill. App. 3d at 488. A challenge to the propriety of a decision to grant a section 2-615 motion to dismiss presents a legal question that we review *de novo*. *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 8, 933 N.E.2d 860 (2010).

Among the circuit court's reasons for dismissing the defendants' counterclaims was its conclusion that the defendants failed to plead damages. A legally sufficient claim for breach of contract or fraud must allege the existence of damages. *Doe v. Northwestern University*, 289 Ill. App. 3d 39, 45, 682 N.E.2d 145 (1997). The purpose of damages for breach of contract is to put

13

NOS.  1-10-0427 and 1-10-1348, cons.

the injured party in the position it would have been in had the contract been fully performed. *Anderson v. Long Grove Country Club Estates, Inc.*, 111 Ill. App. 2d 127, 141, 249 N.E.2d 343 (1969). In a cause of action for fraud, a defrauded party is entitled to those damages that enable it to be "placed in the same financial position as [it] would have been had the misrepresentation in fact been true." *Brown v. Broadway Perryville Lumber Co.*, 156 Ill. App. 3d 16, 25, 508 N.E.2d 1170 (1987).

To argue that the circuit court erred in concluding that they did not allege damages sufficiently, the defendants point to several rights--their right to a monthly $7,500 payment until closing, their option to terminate the purchase agreement upon a late closing, their option to allow the closing to be further delayed, and their ability to accrue interest on their purchase money--that they forwent by entering into the closing agreement. The measure of the defendants' damages, however, is not the value of the items they bargained away as part of the closing agreement, but the difference in their current position and the position they would have attained if the plaintiff had fully performed its duties under the contract (or if its representations had been true). Accordingly, we agree with the circuit court that none of the above points constitute proper damages allegations.

The defendants' remaining damages argument asserts that the alleged breaches or misrepresentations caused a disparity between their expected value for the condominium and the actual value of

14

the condominium, due to the "risks inherent in a building that has not yet achieved a minimum threshold of sales" or that is still undergoing construction.  However, to the extent those factors detracted from the value of the defendants' purchase, they were only transitory and, even according to the defendants' counterclaim, were resolved with no intervention from the defendants.  Cf. *Hudlin v. City of East St. Louis*, 227 Ill. App. 3d 817, 834, 591 N.E.2d 541 (1992) (if an injury to real estate is not permanent, then the measure of damages is the cost of restoration). The defendants make no allegation that the plaintiff did not eventually complete the requisite construction and sales so that those problems no longer affect the defendants, nor do they allege that they were in any way harmed by any temporary diminution in value, for example by failed efforts to sell their condominium or obtain loans based on its value.  For these reasons, we reject the defendants' final argument that they properly alleged damages from the plaintiff's alleged misconduct.  As a result, we agree with the circuit court that the defendants failed to allege damages and that their counterclaims should have been dismissed.

For the foregoing reasons, we affirm the judgment of the circuit court in case number 1-10-0427, and we dismiss the defendants' appeal in case number 1-10-1348.

No. 1-10-0427, Affirmed.

No. 1-10-1348, Dismissed.

15

## REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
### (Front Sheet to be attached to Each Opinion)

| | |
|---|---|
| **Please use the following form:**<br><br>**Complete TITLE** | **PALMOLIVE TOWER CONDOMINIUMS, LLC, A,**<br>**Delaware limited liability company,**<br><br>   **Plaintiff-Appellee,**<br><br>   **v.**<br><br>**MARY SIMON, as Trustee of the Marcy Simon Revocable Trust**<br>**dated September 19, 1991, and MARC SIMON,**<br><br>   **Defendants-Appellants.** |
| **Docket No.**<br><br>**Court**<br><br>Opinion Filed | **No.**     **1-10-0427 and 1-10-1348, cons.**<br><br>Appellate Court of Illinois<br>First District, **First** Division<br><br>   **May 16**     **, 2011**<br>(Give month, day and year) |
| **JUSTICES** | **JUSTICE THOMAS E. HOFFMAN,** delivered the opinion of the Court.<br><br>   **HALL, P.J. and LAMPKIN, J.,**     **, concur[s].**<br><br>   **, dissent.** |
| **Appeal from the Circuit Court of Cook County; the Judge Presiding.** | Lower Court and trial Judge(s) in form indicated in margin:<br><br>   Appeal from the Circuit Court of Cook County.<br><br>   **The Hon.(s)**     **STUART E. PALMER**     **, Judge(s) Presiding.** |
| **For Appellants, John Doe, of Chicago.**<br><br>**For Appellees, Smith & Smith, of Chicago.**<br><br>**Also add attorneys for third party appellants and/or appellees.** | **Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.**<br><br>**FOR APPELLANT:**    Sperling & Slater, P.C. of Chicago. Steven C. Florsheim & Diana G. Rollman, of counsel.<br>   Robert A. Weisman, LTD., of Chicago. Robert A. Weisman of counsel.<br><br>**FOR APPELLEES:**.    K&L Gates LLP, of Chicago. Abram I. Moore & Daniel G. Rosenberg, of counsel.<br><br>   Cassiday Schade, LLP, of Chicago. Julie A Teuseher & |

16

NOS.  1-10-0427 and 1-10-1348, cons.

Richard A. Barrett, Jr., of counsel.
.

**(USE REVERSE SIDE IF NEEDED)**

17