2019 IL App (1st) 182192-U

No. 1-18-2192

Order filed November 21, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| MARY MELIKA, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | No. 17 D 2037 |
| | ) | |
| and | ) | |
| | ) | |
| ANDREW ESKAROS, | ) | Honorable |
| | ) | Marya Nega, |
| Respondent-Appellee. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: We lack jurisdiction to review the circuit court's order registering a foreign judgment because that order did not finally resolve the underlying litigation and because the circuit court did not find that no just reason exists for delaying an appeal under Illinois Supreme Court Rule 304(a).

¶ 2    Mary Melika filed a petition for legal separation from her husband, Andrew Eskaros, and sought maintenance, child support, and an allocation of parental responsibilities. In response,

Andrew filed a petition to register an Egyptian judgment dissolving the parties' marriage and moved to dismiss Mary's petition for legal separation. The circuit court registered the foreign judgment but did not rule on Andrew's motion to dismiss Mary's petition for legal separation. Nor has the court ruled on Mary's requests for maintenance, child support, and an allocation of parental responsibilities. The court has indicated that those issues, plus distribution of the parties' marital property, remain pending.

¶ 3    Mary seeks our immediate review of the circuit court's order registering the Egyptian judgment. She argues that the circuit court applied the wrong legal standard and abused its discretion in deciding to extend comity to that judgment. But Mary's appeal is premature and we lack jurisdiction to consider it. We have no jurisdiction under Illinois Supreme Court Rule 301 because the circuit court has not finally resolved the underlying litigation between the parties. And Rule 304(a) does not confer appellate jurisdiction because the circuit court did not expressly find that no just reason exists for delaying an appeal. Thus, as explained more fully below, we dismiss this appeal for lack of appellate jurisdiction.[1]

¶ 4                                  I. BACKGROUND

¶ 5    Mary and Andrew were married in Egypt in 2011. They moved to Illinois in 2012, shortly after Mary gave birth to the couple's only child. In 2017, Mary filed a petition for legal separation in the Circuit Court of Cook County. See 750 ILCS 5/402 (West 2018). She also filed a petition for maintenance, child support, and an allocation of parental responsibilities. See 750 ILCS 5/504 (West 2018), 750 ILCS 5/505 (West 2018), 750 ILCS 5/602.5 (West 2018).

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 6    Andrew moved to dismiss Mary's petition for legal separation and her claim for maintenance. He alleged that the couple had jointly filed for divorce in Egypt in 2015 and had stipulated to the terms of the divorce decree entered by the Egyptian court in 2016. He further alleged that the parties entered a settlement agreement in connection with the Egyptian divorce proceedings in which Mary waived her right to spousal support in exchange for a lump-sum payment from Andrew. In light of the Egyptian divorce decree and the alleged settlement agreement, Andrew argued that the circuit court lacked subject matter jurisdiction to consider Mary's petition for legal separation and that Mary's request for maintenance was barred by *res judicata*.

¶ 7    In support of his motion to dismiss, Andrew submitted a one-page, English translation of the Egyptian judgment and five additional pages of Arabic text that he neither translated nor explained. The English-language document states that, on July 13, 2016, the Egyptian court "enter[ed] a judgment by proving the divorcing [of Andrew] from [Mary] [in] a revocable divorce, and obligated [Andrew] to pay the expenses and seventy five pounds against attorney's fees." The judgment does not explain the legal effect of a "revocable divorce." Nor does it make reference to a settlement agreement between the parties. While his motion to dismiss was pending, Andrew filed a petition to register the Egyptian judgment under the Uniform Enforcement of Foreign Judgments Act (735 ILCS 5/12-650 *et seq*. (West 2018)), attaching the one-page, English translation of the judgment and the five pages of untranslated Arabic text. Andrew later submitted what he alleged was an English translation of the settlement agreement. In that one-page, handwritten document, Mary purportedly waived "all [her] rights financial and legitimate which [are] consequent on the [Egyptian] divorce proceedings" in exchange for a

payment from Andrew's father of 450,000 Egyptian Pounds (which, according to the parties, was equal to approximately $62,000).

¶ 8    In response to Andrew's motion to dismiss and his petition to register the Egyptian judgment, Mary argued that the circuit court should decline to extend comity to the judgment because Andrew obtained it in bad faith and because Egyptian divorce law is contrary to Illinois public policy. She alleged that both she and Andrew were domiciled in Illinois throughout the pendency of the Egyptian proceedings. She further alleged that she did not participate in the Egyptian proceedings and that Andrew unilaterally initiated them without her knowledge or consent in order to take advantage of Egyptian divorce law. She denied entering any settlement agreement or receiving a lump-sum payment from Andrew pursuant to such an agreement.

¶ 9    The circuit court held an evidentiary hearing on Andrew's petition to register the Egyptian judgment, but there is no transcript of that hearing in the record on appeal.[2] Based on comments that the trial judge and the parties made on the record at a subsequent court appearance, it appears that Mary, Andrew, and a third-party testified at the evidentiary hearing. But without a transcript of the hearing, there is no way for us to know the substance of their testimony or whether additional, documentary evidence was introduced. Instead, the record contains only a one-page, handwritten order in which the court found that Mary "had knowledge" of the Egyptian proceedings and that the Egyptian court "had jurisdiction over the parties." Based on those findings, the court ordered the registration of the Egyptian judgment.

_____

[2] As appellant, it was Mary's "burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). Accordingly, "[a]ny doubts which may arise from the incompleteness of the record will be resolved against [her]." *Id*. at 392.

The circuit court did not address Andrew's motion to dismiss Mary's petition for legal separation or Mary's petition for maintenance, child support, and an allocation of parental responsibilities.

¶ 10    Mary filed a motion to reconsider the court's order registering the Egyptian judgment. She reiterated her argument that Andrew initiated the Egyptian proceedings in bad faith, and she argued that the Egyptian divorce was obtained under principles of Islamic Sharia law that did not afford her due process and are contrary to Illinois public policy. In particular, she argued that the Egyptian divorce decree is incompatible with basic tenets of Illinois law because Andrew may unilaterally revoke it and because it was made retroactive to the date on which Andrew first asked for a divorce. Mary further alleged that the settlement agreement submitted by Andrew was procured by fraud and that her signature on it was forged.

¶ 11    After hearing oral argument, the circuit court denied Mary's motion to reconsider. Without recounting the substance of the testimony presented at the evidentiary hearing, the court noted that it had found Andrew "credible" and Mary "totally incredible." The court clarified that it not only found that Mary knew about the Egyptian proceedings but that she had actively participated in them with the assistance of an attorney. Finally, the court expressed puzzlement over Mary's objection to registering the Egyptian divorce judgment. The court noted that the Egyptian judgment merely granted the parties a divorce and did not purport to address issues of child custody, child support, maintenance, or property distribution. Those issues, the court explained, would be addressed in the Illinois proceedings under Illinois law. Mary suggested that recognition of the Egyptian divorce judgment would affect any decision the court ultimately makes concerning property distribution and maintenance by shortening the duration of the parties' marriage. The court explained, however, that despite its registration of the Egyptian

judgment it would not necessarily be bound by the date of that judgment. In particular, the court stressed that it was "highly likely [to] deviate [from the date of the Egyptian judgment] in calculating the term of *** maintenance."

¶ 12    Mary indicated that she intended to appeal, and the circuit court responded that she was "welcome to do that." Mary then filed a notice of appeal from the circuit court's orders registering the Egyptian judgment and denying her motion to reconsider.

¶ 13                                    II. ANALYSIS

¶ 14    Mary contends that the circuit court erred in registering and extending comity to the Egyptian divorce judgment. Before we may reach that issue, however, we must address the question of appellate jurisdiction, which we have a duty to consider *sua sponte*. See *In re Marriage of Mardjetko*, 369 Ill. App. 3d 934, 935 (2007).

¶ 15    Mary asserts that our jurisdiction lies under Illinois Supreme Court Rule 301. That rule provides that "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). "A judgment is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment." *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171 (1981). Rule 301, in other words, "govern[s] appeals from cases in which the final order has disposed of the entire controversy." *In re Adoption of Ginnell*, 316 Ill. App. 3d 789, 791 (2000). A judgment is "not final and appealable" under Rule 301 unless it "dispose[s] of all issues between the parties and *** terminate[s] the litigation." *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11. Although Mary asserts that the circuit court's order registering the Egyptian divorce decree "had the effect of a final disposition" of her petition for legal separation, the registration order did not resolve all

issues between the parties and dispose of the entire litigation. To the contrary, the circuit court has not yet ruled on Mary's petition for maintenance, child support, and an allocation of parental responsibilities. Nor has the circuit court distributed the parties' marital property. Until the circuit court resolves those pending issues, its judgment is not final and appealable under Rule 301.

¶ 16    Because Rule 301 does not confer jurisdiction over this appeal, we turn to Rule 304(a), which "governs cases in which a final order has been entered as to a separate part of the controversy." *In re Adoption of Ginnell*, 316 Ill. App. 3d at 791. Under Rule 304(a), where "multiple claims for relief are involved in an action," a party may appeal "from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). The circuit court made no such finding here. Although the circuit court told Mary that she was "welcome to" appeal the court's order registering the Egyptian judgment, the court did not make any finding, let alone in writing, that there was no just reason to delay such an appeal or otherwise referencing Rule 304(a). See *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 544 (2011) ("a circuit court order accompanied by language indicating that it is 'final and appealable,' but not referencing immediate appeal, the justness of delay, or Rule 304(a), does not trigger the rule"). In the absence of an appropriate written finding by the circuit court, we lack jurisdiction to consider this appeal under Rule 304(a). See *In re Marriage of Schuham*, 99 Ill. App. 3d 48, 51 (1981) (dismissing appeal from order registering foreign judgment where motion to modify the judgment remained pending and no Rule 304(a) finding had been made).

¶ 17    Finally, we note that the rule of *In re Marriage of Bogan*, 116 Ill. 2d 72 (1986), does not alter our conclusion that we lack jurisdiction over this appeal. *Bogan* held that a party who objects to the entry of a bifurcated divorce judgment—a judgment that dissolves the parties' marriage but reserves all remaining issues for future consideration—may immediately appeal the entry of such a judgment. *Id*. at 75-76. *Bogan* recognized that, unless a party could immediately appeal the entry of a bifurcated judgment, any challenge to the propriety of bifurcation "would be moot[ed]" by the circuit court's eventual resolution of the reserved issues. *Id.* at 76. This rationale naturally limits the scope of an appeal under *Bogan* to the propriety of bifurcation itself. See *In re Marriage of Mardjetko*, 369 Ill. App. 3d at 936 ("The most natural reading of *Bogan* is that it holds that the propriety of a bifurcation is the *only* issue reviewable before the trial court decides all issues.") (emphasis in original).

¶ 18    *Bogan* is inapplicable here for two reasons. First, the circuit court did not enter a bifurcated judgment of dissolution. It merely granted a petition to register a foreign divorce judgment. Second, even if the court's order registering the foreign judgment and reserving other issues for future consideration could be deemed a bifurcated judgment of dissolution, Mary does not challenge the propriety of bifurcation—she challenges the merits of the registration order. Unlike a challenge to the propriety of bifurcation, a challenge to the registration order will not be rendered moot by the court's eventual resolution of the remaining issues presented in the case. Rather, after the entry of a final judgment, Mary will retain the ability to challenge the circuit court's registration order if she believes that the court's distribution of marital property and award of maintenance (or its resolution of any other reserved issues) were negatively affected by

its recognition of the Egyptian divorce decree. For these reasons, *Bogan* does not permit an immediate appeal of the circuit court's registration order. [3]

¶ 19                                III. CONCLUSION

¶ 20    For the foregoing reasons, we dismiss this appeal for lack of appellate jurisdiction.

¶ 21    Appeal dismissed.

---

[3] Lower courts are split on whether appellate jurisdiction under *Bogan* rests on Rule 301 or instead requires a finding by the circuit court under Rule 304(a). Compare *In re Marriage of Tomlins*, 2013 IL App (3d) 120099, ¶ 21 ("We believe the proper interpretation of *Bogan* is that the decision to enter a bifurcated judgment of dissolution constitutes a final and appealable judgment under Illinois Supreme Court Rule 301."), with *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 70 ("Without Rule 304(a) language, a bifurcated judgment is not final and appealable."). Because we conclude that *Bogan* is inapplicable, we need not address this issue.