2023 IL App (1st) 230185

No. 1-23-0185

Opinion filed November 6, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| GATEWAY AUTO, INC., | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellant, | ) | |
| | ) | Appeal from the |
| v. | ) | Circuit Court of |
| | ) | Cook County. |
| COMMERCIAL PALLET, INC.; LES HAGAN, | ) | |
| Individually and in His Capacity as Trustee of the Lester | ) | No. 19 CH 7472 |
| O. Hagan Declaration of Trust Under the Trust Agreement | ) | |
| Dated December 3, 1991; 1300-08 RANDOLPH, LLC; | ) | The Honorable |
| and PATRICK BUCK, Individually and as Authorized | ) | Mary Colleen Roberts, |
| Representative of 1300-08 W. Randolph, LLC, | ) | Judge Presiding. |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Les Hagan, Defendant, Counterplaintiff, and Third-Party | ) | |
| Plaintiff; 1300-08 W. Randolph, LLC, Defendant- | ) | |
| Appellee; Shadi Qattawi, Third-Party Defendant). | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justice Coghlan concurred in the judgment and opinion.
Justice Pucinski specially concurred, with opinion.

**OPINION**

¶ 1    The plaintiff and counterdefendant, Gateway Auto, Inc.,[1] seeks to appeal the trial court's order granting the motion of the defendant and counterplaintiff, 1300-08 W. Randolph, LLC (Randolph), to dismiss Gateway Auto's third amended complaint with prejudice, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)), as well as the trial court's denial of Gateway Auto's motion to reconsider that order. Randolph argues that this court lacks jurisdiction to consider this appeal, due to two counterclaims and third-party complaints that remain unadjudicated and pending in the trial court. We agree that appellate jurisdiction does not exist and, accordingly, dismiss this appeal as premature.

¶ 2                          I. BACKGROUND

¶ 3           A. Third Amended Complaint and Randolph's Motion to Dismiss

¶ 4    The third amended complaint in this case, which is titled "First Amended Complaint (in Law Division)," alleges the following facts. For over a decade prior to 2019, Gateway Auto operated an auto repair shop at 160-162 North Elizabeth Street in Chicago. It refers to this real estate as "Lot B." Prior to June 20, 2019, the owner of Lot B was defendant and counterplaintiff Les Hagan, individually and in his capacity as trustee of the Lester O. Hagan Declaration of Trust under the Trust Agreement dated December 3, 1991 (Hagan or Hagan Trust). Randolph was the owner of the commercial property immediately adjacent to Lot B, referred to as "Lot A." In June 2019, Randolph also purchased Lot B from Hagan. Defendant Patrick Buck is an agent, employee, or authorized representative of Randolph.

---

[1] In all versions of its complaint and the captions of its appellate briefs, the plaintiff refers to itself as Gateway Auto, Inc. The defendants' pleadings assert that no legal entity exists by this name. In its appellate brief, the plaintiff refers to itself as Gateway Auto Service, Inc. We will refer to it as "Gateway Auto."

¶ 5        Prior to August 30, 2018, Gateway Auto's lease of Lot B from Hagan was governed by a series of consecutive three-year written leases, the last one of which expired as of that date. During its tenancy, Gateway Auto made significant investments and upgrades so that Lot B could be utilized as an auto mechanic shop, including installing custom heavy automotive equipment such as hydraulic lifts and bay doors. The parties' final written lease, which was attached as an exhibit to the complaint, contains a provision that states: "Tenant has the right of first refusal to purchase property in the event Landlord receives another offer to purchase from another party." Prior to and following the expiration of the final written lease, the president of Gateway Auto (Shadi Qattawi) and Hagan met on multiple occasions, "agreeing to roll over the lease into another consecutive three-year term with graduated rental increases as denoted in the lease." In reliance on the understanding that the lease had rolled over into a new three-year lease term, expiring on August 30, 2021, Gateway Auto continued to own and operate its business upon Lot B.

¶ 6        After its acquisition of Lot A in 2018, Randolph, by and through its agent Buck, solicited and enticed Hagan to engage in negotiations about selling Lot B. Prior to or during these negotiations, Randolph, by and through Buck, discovered that Lot B was subject to the lease, including the provision giving Gateway Auto a right of first refusal to purchase Lot B. By conducting due diligence, Randolph and Buck knew or should have known of the contractual, lease, and business relationship between Gateway Auto and Hagan. Similarly, they knew or should have known that Gateway Auto had a reasonable expectation of an economic opportunity, to the extent that it reasonably expected to be afforded the opportunity to purchase Lot B. With complete knowledge of the lease and this provision, Randolph continued its negotiations to purchase Lot B from Hagan. In doing so, Randolph and Buck intentionally and unjustifiably enticed Hagan "to improperly attempt to terminate [Gateway Auto's] lease or tenancy in attempt to compel [Gateway Auto] to

surrender possession of Lot B." They also intentionally solicited and enticed Hagan to sell Lot B to Randolph without offering Gateway Auto its right of first refusal and to thereby breach the lease. Upon information and belief, Randolph and Buck, through due diligence, "knew that the [right of first refusal] language could be held to be enforceable due to it lacking a purchase price or a method for determining one," and they "eventually succeeded on that argument and were able to circumvent [Gateway Auto's] expectation to be afforded the opportunity to purchase Lot B." Gateway Auto also had a reasonable expectation of continuing the operations of its business and purchasing Lot B, based on more than a decade of dealings and business relations with Hagan and the lease.

¶ 7    Based on the above facts, the third amended complaint pled one count, for tortious interference with prospective business relations. It alleges that "Randolph's, Buck's, and Hagan's conduct was improper, intentional, without justification or excuse, and not privileged, conditionally, or otherwise, as they had no legal right to interfere with [Gateway Auto's] property or legal rights." It alleges that as a proximate result of the conduct of Randolph, Buck, and Hagan, Gateway Auto suffered damages, including its interest in Lot B being sold to Randolph, and economic loss of the prospective sale of Lot B by Gateway to Randolph or another third party. The prayer for relief seeks compensatory and punitive damages from all defendants, plus costs, expenses, and attorney fees.

¶ 8    By way of procedural background, it does not appear that Buck was ever served with process in this case or that Gateway Auto obtained leave to name him as a defendant (which it first did in its second amended complaint). After filing its third amended complaint, Gateway Auto filed a motion for "retroactive leave" to name Buck as a defendant and to issue summons. This motion was entered and continued for ruling by the trial court on two occasions, but the record on appeal

reflects no ruling upon it by the trial court.

¶ 9        As to Hagan, he was first named as a defendant in the first amended complaint. That version of the compliant, which pended in the chancery division, sought a declaratory judgment regarding the validity of the lease through August 30, 2021, and it sought specific performance requiring Hagan to offer Gateway Auto the ability to purchase Lot B under the right of first refusal provision of the lease. The second amended complaint, which pended in the law division, did not reallege those claims, but instead it employed tort theories of tortious interference with contract and tortious interference with economic opportunity. While the second amended complaint clearly directed these tort theories against Randolph and Buck, it is not clear whether it also directed them against Hagan. No answer or motion to dismiss the second amended complaint was filed on behalf of Hagan, nor does the record reflect any action taken by Gateway Auto with respect to advancing the case against Hagan under the second amended complaint. While the third amended complaint does appear to include allegations directed against Hagan, no answer or motion to dismiss was filed on his behalf, and the record on appeal reflects no action taken by Gateway Auto to advance the case against him.

¶ 10       An entity named Commercial Pallet, Inc., was the sole defendant named in the original complaint and also was included in the first amended complaint. Commercial Pallet was later involuntarily dismissed as having no interest in the property or lease at issue. However, Gateway Auto again included it as a defendant in the caption of the third amended complaint.

¶ 11       A motion to dismiss the third amended complaint was filed on behalf of Randolph only. In that motion, Randolph argued that the third amended complaint included no factual allegations of improper conduct by it that could support a claim for tortious interference with prospective business relations. Randolph argued that its alleged efforts to dissuade Hagan from abiding by the

terms of a contractual relationship with Gateway Auto, which did not exist as a matter of law, was not improper but rather was lawful and privileged competition. Randolph argued that its efforts to persuade Hagan to sell it Lot B, based on its legally accurate understanding that Gateway Auto had no enforceable right of first refusal to purchase Lot B, was proper business competition that was nonactionable in tort.

¶ 12    On September 16, 2022, the trial court entered an order granting Randolph's motion to dismiss the third amended complaint. The trial court's reasoning essentially reflected the arguments advanced by Randolph concerning its privilege to engage in competition, particularly considering that the right-of-first-refusal provision was potentially too indefinite to be enforceable under Illinois law. The dismissal was with prejudice, and the action was continued to a previously set status date of October 19, 2022.

¶ 13    On October 18, 2022, Gateway Auto filed a motion to reconsider the order of September 16, 2022. That motion was briefed, and on December 29, 2022, the trial court entered an order denying the motion to reconsider. The December 29, 2022, order included the statement, "This is a final and appealable order." On January 26, 2023, Gateway Auto filed a notice of appeal concerning the orders of September 16 and December 19, 2022.

¶ 14                        B. Hagan's Counterclaim and Third-Party Complaint

¶ 15    On November 8, 2019, while the first amended complaint was pending, Hagan filed a counterclaim against Gateway Auto, which also named Qattawi as a third-party defendant. That counterclaim alleged that, following expiration of the written lease between the Hagan Trust and Gateway Auto on August 30, 2018, Gateway Auto continued to maintain possession of the premises as a month-to-month tenant. Despite doing this, Gateway Auto had failed to pay rents due from March 2019 through June 2019. Gateway Auto had also failed to pay $6,144.51 due

under the terms of the lease on the tax bills for tax years 2015 to 2019. The counterclaim sought to recover $21,901.55 in damages for breach of lease, plus the attorney fees and costs to which Hagan was entitled under the lease.

¶ 16    In its order of December 15, 2021, the trial court directed Gateway Auto and Qattawi to file its answer to Hagan's counterclaim by February 9, 2022, which they did. The record on appeal reflects no further action on this counterclaim.

¶ 17            C. Randolph's Counterclaim and Third-Party Complaint

¶ 18    On February 9, 2022, Randolph also filed a counterclaim against Gateway Auto and third-party complaint against Qattawi. That counterclaim alleged that the written lease between Gateway Auto and Hagan had included a provision by which all alterations, installations and improvements became the property of the landlord and shall be surrendered as part of the leased premises at the end of the term. It alleged that, in July 2021, following the eviction of Gateway Auto from the premises pursuant to an order of the eviction court in a separate case, Gateway Auto had breached this provision by removing certain installations from the leased premises. The counterclaim sought damages in the amount of $74,240, plus attorney fees.

¶ 19    On May 31, 2022, an answer to this counterclaim was filed on behalf of Gateway Auto and Qattawi, along with three affirmative defenses. On August 11, 2022, Randolph filed a motion to strike the affirmative defenses to the counterclaim. This is the last action reflected in the record on appeal with respect to this counterclaim.

¶ 20                    II. ANALYSIS

¶ 21    Gateway Auto argues on appeal that the trial court erred by concluding that the factual allegations of its third amended complaint were insufficient to state a cause of action for tortious interference with prospective economic advantage. It argues that the trial court erred by dismissing

the third amended complaint with prejudice and by denying its motion to reconsider.

¶ 22　　　For its part, Randolph argues that this court lacks jurisdiction to consider this appeal. Randolph cites the fact that counterclaims and third-party complaints were filed against Gateway Auto and Qattawi by both Hagan and Randolph, and it asserts that these remain unadjudicated, despite the trial court's dismissal with prejudice of the third amended complaint against Randolph. Accordingly, Randolph argues, the trial court has not adjudicated all claims, rights, and liabilities as to all parties, and it made no express finding that there is no just reason to delay appeal of the orders challenged by Gateway Auto.

¶ 23　　　In reply to this jurisdiction argument, Gateway Auto argues that appellate jurisdiction exists under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). That rule provides in pertinent part:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." *Id.*

Gateway Auto contends that the trial court's order of September 16, 2022, constituted a final judgment as to one or more but fewer than all parties or claims because it dismissed with prejudice the claims in the third amended complaint against Randolph. Further, it argues that the trial court's later finding that the denial of its motion to reconsider was "a final and appealable order" is

sufficient to render both orders appealable under Rule 304(a), particularly because they involve a final judgment.

¶ 24    Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) authorizes appeals from final judgments in civil cases as a matter of right. A judgment or order is "final" if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997). A dismissal of the claims in a complaint with prejudice is usually considered a final judgment, although such an order is not always immediately appealable. *Id.* Under Rule 304(a), if multiple parties or claims are involved in an action, a Rule 304(a) finding is required before a final order disposing of fewer than all claims in the action is immediately appealable. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); *Dubina*, 178 Ill. 2d at 502. This includes actions in which counterclaims have been filed that remain unresolved. *Stasko v. City of Chicago*, 2013 IL App (1st) 120265, ¶ 28. Without a Rule 304(a) finding, such a final order does not become appealable until all claims in the multiclaim litigation have been resolved; once the action is terminated in its entirety, all final orders become appealable under Rule 301. *Dubina*, 178 Ill. 2d at 502-03.

¶ 25    Although reviewing courts allow for some leeway in the language that a trial court may use to invoke Rule 304(a), the record must include some indication that the trial court's intent was to invoke that rule. *Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 543-44 (2011). Imposing such a requirement promotes the rationale underlying Rule 304(a), which is to limit piecemeal appeals but allow for an early appeal when the trial court finds in its discretion that doing so would expedite resolution of the controversy, be fair to all parties, and conserve judicial resources. *Id.* at 544.

¶ 26    Accordingly, "[a] circuit court's declaration that an order is 'final and appealable,' without

reference to the justness of delay, or even reference to immediate appealability, evinces no application of the discretion Rule 304(a) contemplates." *Id.* (citing *Matson v. Department of Human Rights*, 322 Ill. App. 3d 932, 939 (2001)). "For these reasons, a circuit court order accompanied by language indicating that it is 'final and appealable,' but not referencing immediate appeal, the justness of delay, or Rule 304(a), does not trigger the rule." *Id.*

¶ 27    This principle is controlling on the question of our jurisdiction. We take no issue with the argument that the order of September 16, 2022, was a final order, in that it dismissed with prejudice Gateway Auto's sole claim against Randolph. It was not, however, an appealable order because other claims remained pending and unadjudicated in the action. See *Dubina*, 178 Ill. 2d at 502. This included the two counterclaims and third-party claims filed by against Gateway Auto and Qattawi by Hagan and Randolph, which the record on appeal indicates remain pending and unadjudicated through the present time. Also, it is not clear from the record on appeal whether claims asserted against Hagan and Buck in the third amended complaint remain to be resolved.

¶ 28    The nonappealability of the September 16, 2022, order was not remedied by the trial court's later finding in its order of December 29, 2022, that its denial of Gateway Auto's motion to reconsider that order was a "final and appealable" order. This finding contains none of the hallmark language that would suggest to us that the trial court was intending in its considered discretion to permit an early appeal under Rule 304(a). There was no reference to immediate appealability, the justness of delay, or Rule 304(a) itself. Further, Gateway Auto does not direct our attention to any request for the trial court to make a Rule 304(a) finding. Accordingly, we conclude that jurisdiction pursuant to Rule 304(a) was not invoked by the trial court's order of December 29, 2022.

¶ 29    We reject the argument by Gateway Auto in its reply brief that we should decline to follow the rule of *Palmolive Tower* and instead follow the reasoning of *Com-Co. Insurance Agency, Inc.*

*v. Service Insurance Agency, Inc.*, 321 Ill. App. 3d 816 (2001). In the latter case, the court essentially held that a trial court's finding that an order was "final and appealable" was sufficient to trigger Rule 304(a), as it constituted an "implicit holding that the claim [being appealed] is sufficiently separable from the claims concerning the other clients." *Id.* at 819. The court in *Palmolive Tower* found the reasoning of *Com-Co. Insurance Agency* to be unpersuasive because (1) its reasoning was internally contradictory as to whether a finding of "appealability" alone was controlling, (2) it oversimplified the holding of *In re Application of the Du Page County Collector*, 152 Ill. 2d 545 (1992), which held that a reference to "appealability" without "enforceability" could invoke Rule 304(a), but not that "appealability" without any reference to the immediacy of appeal or the justness of delaying appeal was sufficient, and (3) its reliance on the trial court's "implicit" holding was contrary to the rule's requirement that the trial court make an "express" finding. See *Palmolive Tower*, 409 Ill. App. 3d at 545. We find the reasoning of *Palmolive Tower* to be more persuasive on the question before us, and we decline to depart from the rule set forth in that case.

¶ 30     We further reject Gateway Auto's reliance on the finality of the order of September 16, 2022, as controlling, when considered in light of the trial court's later finding that its ruling on reconsideration was "final and appealable." Gateway Auto attempts to distinguish this case from others in which the orders that the appellants were attempting to appeal, based on a trial court's finding that they were "final and appealable," were, in fact, nonfinal orders. See, *e.g.*, *Coryell v. Village of La Grange*, 245 Ill. App. 3d 1 (1993) (involving dismissal of three counts of five-count complaint, with no indication that dismissals were with prejudice).

¶ 31     It is a requirement of the plain language of Rule 304(a) that every appeal under that rule must involve a "final" judgment. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) ("If multiple parties or

multiple claims for relief are involved in an action, an appeal may be taken from a *final judgment* as to one or more but fewer than all of the parties or claims \*\*\*." (Emphasis added.)). Accordingly, the fact that an order is final cannot be the controlling factor on whether it is appealable under the rule, where multiple parties or claims for relief are involved in the action. Instead, for appellate jurisdiction to exist pursuant to that rule, there must be some indication in the record that the trial court intended in its discretion to invoke the rule and allow an early appeal. *Palmolive Tower*, 409 Ill. App. 3d at 544. This case contains no such indication, and therefore we dismiss this appeal as premature.

¶ 32                                   III. CONCLUSION

¶ 33        For the forgoing reasons, this appeal is dismissed.

¶ 34        Appeal dismissed.

¶ 35        JUSTICE PUCINSKI, specially concurring:

¶ 36        I agree that this appeal is premature and should be dismissed. Where I disagree with my colleagues is that, even while dismissing the appeal, we can and should gently point out that dismissing Gateway's third amended complaint with prejudice does the court or the parties no favor in trying to get the full facts of this case.

*Gateway Auto, Inc. v. Commercial Pallet, Inc.*, **2023 IL App (1st) 230185**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-7472; the Hon. Mary Colleen Roberts, Judge, presiding. |
| **Attorneys for Appellant:** | Mark A. Wolff, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Richard Lee Stavins, William A. Castle Jr., and Diana H. Psarras, of Robbins DiMonte, Ltd., of Chicago, for appellee. |